16457
CENTRAL REALTY CORPORATION v. ALLISON, BUILDING
INSPECTOR, CITY OF GREENVILLE
(63 S. E. (2d) 153)

436

*Messrs. Love, Thornton & Blythe,* of Greenville, *for Appellants,*

*Messrs. Wesley Walker* and *Mann, Arnold & Mann,* of Greenville, *for Respondent,*

January 29, 1951.

LIDE, Acting Associate Justice.

This action was brought in the Greenville County Court to determine the validity of an amendment to the zoning ordinance of the City of Greenville, by which all limitations as to the height of buildings and density of population were re-

moved from the area in question. The action was commenced on July 10, 1950; and after the joinder of issue the cause was by agreement of counsel heard on its merits before Hon. W. B. McGowan, County Judge, without a jury, on July 17, 1950; and thereafter, to wit, on July 28, 1950, he handed down his order to the effect that the amendment is valid, and that the complaint should be dismissed with costs. The case comes before us upon appeal from that order.

There was no oral testimony given at the hearing before the trial Judge, since the evidence consists mainly of matters of record, and is really undisputed. Our decision depends upon the application, to the admitted facts, of the zoning law contained in the statutes and in the ordinances of the City of Greenville. A recital of the relevant statutes and ordinances, as well as the basic facts, will clarify the issues.

The statutory law relating to the zoning of municipalities will be found in Sections 7390 to 7398, both inclusive, in the 1942 Code; and reference will now be made to some of the provisions of this appropriate legislation. Authority is thereby given to the legislative bodies of cities and incorporated villages, for the promotion of the general welfare of the community, to regulate and restrict in certain respects, by ordinance, the location and use of buildings, structures and land for trade, industry, residence or other purposes; and to this end, the local legislative body may divide the municipality into districts of such number, shape and area, as may be deemed best suited to effectuate the purposes of the zoning statute.

It is further provided (in Section 7392) that such regulations "shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

It is also provided (in Section 7393) that the legislative body of any such municipality shall provide for the manner

in which such regulations and restrictions shall be determined, established and enforced, and that the same may from time to time be amended, supplemented or changed; and it is further provided in this section as follows: "However, no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such municipality."

The whole of Section 7394 is also quite material in the consideration of the case before us, and is therefore quoted in full as follows: "Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change signed by the owners of twenty per cent. or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof, or of those directly opposite thereto, such amendment shall not become effective except by the favorable vote of three-fourths of all the members of the legislative body of such municipality. The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments."

There are other provisions in the statutory zoning law, to which brief reference will now be made. Section 7395 provides for the appointment, by the legislative body of the municipality, of a zoning commission; stating that where a city plan commission already exists, it may be appointed as the zoning commission. And Section 7396 provides for the appointment of a board of adjustment; and also clearly contemplates the appointment of an administrative officer with important official duties; and this section expressly provides that appeals may be taken to the board of adjustment from any decision of such administrative officer.

Pursuant to the statutory zoning law aforesaid, the City Council of the City of Greenville on July 25, 1944, duly enacted a comprehensive and well prepared zoning ordinance, which is before the Court, under the stipulation of counsel as contained in the record. This ordinance, among many other things, divided the city into various districts, including the particular district involved in this litigation, which is described as "H" Light Industrial; and it is provided with reference to this district that no building shall exceed six (6) stories or seventy-five (75) feet in height; and that lots upon which multiple apartment buildings are located shall contain an area of not less than 1,500 square feet per family; this latter provision being commonly referred to as the density of population regulation.

On March 23, 1948, Article XIX of the city zoning ordinance was amended by adding the following paragraph relating to a written protest, for which provision had previously been made in accordance with the statute, signed by the owners of twenty per cent. or more of the property affected by the proposed change. "The written protest, as provided for, shall be filed with the City Clerk not later than five days before the date set in the notice for the public hearing before the City Council in order that the City Engineering Department may have an opportunity to check the percentage of frontage in the three above named locations owned by those protesting."

The city zoning ordinance also provides in Article XX, Section 1: "It shall be the duty of the building inspector to enforce this ordinance." And it is further provided in this section that appeal from the decision of the building inspector may be made to the Board of Adjustment as previously provided in Article XIV.

While the zoning ordinance contains no such *amendment*, the transcript of record shows that at a special meeting of the City Council held March 17, 1948, a motion which may be deemed a *resolution* was adopted to the effect "that in the

future when property in the City is rezoned, the City Clerk and Treasurer be instructed to notify all property owners affected by such change in order that they may appear for or against the proposed amendment to the Zoning Ordinance." And the resolution was amended so as also to provide that the "Secretary of the Zoning Commission notify those affected by the contemplated change in the Zoning Ordinance."

The record shows that the "City Planning and Zoning Commission recommended an amendment to said zoning ordinance relating to said area to the extent of removing said restrictions as to height of buildings and density of population." And the record also shows that the City Council caused to be published in The Greenville Piedmont on May 25, 1950, a notice to the effect that a public hearing would be held in the City Council Chambers at 7:30 P. M. on the 13th day of June, 1950, "at which time all interested parties, residents and property owners would be heard for and against the proposed amendment." And the notice accurately described the area concerned, and set out in detail the particular proposed amendment, to wit: "the removal of the regulation as to the height of buildings and density of population." This advertised notice was the only notice given..

Pursuant to this notice the meeting was held on June 13, 1950, as advertised, at which persons opposing or favoring the proposed amendment were duly heard by the City Council. The hearing, however, was not concluded at this time, but was adjourned to June 20th, at 7:30 P. M., when the hearing, *pro* and *con,* with reference to the proposed amendment, was completed; after which the amendment was passed by a majority vote on the first reading. Subsequently, and in due course, the amendment was passed at second and third readings upon a majority vote, and thereupon became effective. The amendment, however, was not adopted on any of the readings by a three-fourth vote of all the members of the legislative body.

No written protest was filed five days before the date set in the notice for the public hearing, to wit, June 13, 1950; and in fact no such protest was filed until June 20, 1950, when at 4 P. M. on that day such a protest was filed with the City Clerk, and the same appears to have been signed by considerably more than twenty per cent. of the owners affected. This protest, not having been timely filed, as required by law, was deemed by the City Council to be ineffective for the purpose of requiring a three-fourths favorable vote of all the members of the municipal legislative body.

After the happenings above recounted, this action was brought by the plaintiff, which owns real estate in the area affected by the amendment in question, and the same purports to be brought on behalf of itself and all others similarly situated, who shall come in; but none seems to have done so. The complaint sets forth the pertinent facts, and indicates that the plaintiff contends that the action taken by the City Council was invalid because no proper notice was given of the public hearing, and also that the written protest was duly and timely filed, under a proper construction of the applicable law, and hence that the amendment could not be effective, because it was not adopted by a three-fourths vote of all the members of the council. The prayer of the complaint is, in substance, that the purported amendment to the zoning ordinance be declared void and invalid, and that the defendant as the building inspector be enjoined from issuing any building permit in accordance with the purported amendment, and that pending the determination of the action he be temporarily so restrained.

Upon this verified complaint Judge McGowan by his order dated July 10, 1950, issued a rule to show cause returnable July 17, 1950, requiring the defendant to show cause why he should not be enjoined pending the determination of the action, and in the meantime restraining him from issuing any building permit pursuant to the authority of the amendment in question. The defendant in due time filed his answer

and return, alleging in substance that due and legal notice of the public hearing was given, and that the alleged written protest was not timely filed as required by law, and that consequently the complaint should be dismissed.

Upon the hearing of the cause on the merits, as hereinbefore stated, Judge McGowan issued his order dated July 28, 1950, holding in favor of the defendant on the issues involved, and directing that the temporary restraining order previously issued be dissolved, and that the complaint be dismissed with costs. The exceptions of the appellant to this order are eight in number, which are reduced by it in its brief to five questions, while the respondent in his brief states the questions involved as three in number. However, we think that the controversial issues may be encompassed in two questions, in connection with which subordinate matters may be properly considered. The first of these questions, which will now be discussed, is stated as follows:

*(1) Was legal notice given of the public hearing on the amendment to the zoning ordinance?*

As hereinbefore quoted, but which will now be repeated for convenience, Code Section 7393 provides with reference to notice as follows: "At least fifteen days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation, in such municipality". And the record shows without contradiction, as already stated, that such a notice was given, to wit, that it was given by publication in The Greenville Piedmont, a paper of general circulation in Greenville, on May 25, 1950, nineteen days before June 13, 1950, the date set for the hearing. Hence it appears that this notice was given in full compliance with the law, and there is nothing in the language used which indicates that more than one publication could be required. In the case of *Cleveland v. City Council of Spartanburg*, 54 S. C. 83, 31 S. E. 871, it was specifically held that a statute providing for at least three weeks' notice of an election by advertisement was fully com-

plied with by a single publication of such notice three weeks before the election.

It is, however, earnestly contended that the case is governed by the provisions of Code Section 8901, which reads as follow: "In cases where it is required that notice be published in a newspaper for two (2) weeks, or fifteen (15) days, the publication of such notice in two (2) successive weeks shall be sufficient: *provided, further,* that at least eight days shall have expired after the date of the first publication and on or before the date fixed for the doing of the thing for which notice is given."

Judge McGowan held, and we think rightly, that this quoted section, based upon an act adopted in 1921, was intended to clarify Section 8899 relating to judicial sales of real and personal property based upon a statute originally adopted in 1875. Moreover, it is quite obvious that Section 8901 does not apply here, because under that section an *eight-day* notice would be sufficient, and this would be in direct conflict with the provisions of Section 7393 requiring *at least* fifteen days' notice.

But it is contended in behalf of the appellant that under the resolution adopted March 17, 1948, hereinbefore mentioned, published notice was not sufficient, but that there should have been some specific notice given to all property owners by the Secretary of the Zoning Commission, which was not done in this case. We do not think, however, that the resolution is effective for this purpose. In the first place, it is quite indefinite, for it does not state what sort of notice, whether oral or written, should be given, or if written, how the same should be given, whether by letter or by personal service of a written notice. Besides, there is nothing in the resolution to indicate whether such notice would supersede the required advertised notice or whether it would be supplementary thereto.

Besides, as a matter of law, we are of opinion that at all events such a resolution cannot be considered as anything

more than merely directory, and certainly could not be given mandatory effect. Indeed, it seems to be well settled that a "resolution is not a law, and in substance there is no difference between a resolution, order, and motion". 37 Am. Jur. 755; 43 C. J. 519; and 62 C. J. S., Municipal Corporations, § 412, 787.

The following statement of the law as contained in 37 Am. Jur. 835, appears to be well supported by the authorities generally: "Ordinarily, a municipal ordinance cannot be amended or repealed by a mere resolution. To accomplish that result a new ordinance must be passed. Some jurisdictions, moreover, have held that the same formalities necessary to the enactment of an ordinance must be observed in its repeal or amendment."

To permit the previous ordinance here, which conforms to Code Section 7393, to be amended or repealed by the indefinite motion or resolution above referred to would result, we believe, in repeated confusion. Hence the first question should be answered adversely to the contention of the appellant.

The second question for our consideration is as follows:

*(2) Was written protest timely filed as required by law?*

Admittedly the written protest signed by the owners of twenty per cent. or more of the property affected was not filed until June 20, 1950, a week after the date fixed for the hearing, to wit, June 13, 1950, and hence was not filed five days before the date set in the notice for the public hearing, as required by the amendment adopted March 23, 1948, to the previous ordinance, to which reference has hereinbefore been made. The appellant, however, attacks the validity of this amendment, upon the ground that it does not conform to the statuory provisions contained in Section 7394; citing the case of *Law v. City of Spartanburg,* 148 S. C. 229, 146 S. E. 12. This case very properly held that a municipal ordinance repugnant to the Constitution or

general laws of the State is void. But we do not think the amendatory ordinance in question here is in conflict with the State law. Section 7394 does not explicitly state when or where the protest is to be filed, while the original ordinance required the same to be presented in writing to the City Clerk, and the amendatory ordinance of March 23, 1948, required it to be filed with the City Clerk not later than five days before the date set in the notice for the public hearing, for the very good reason therein assigned. Hence the amendatory ordinance of March 23, 1948, merely makes definite the statutory law, and is not repugnant to or in conflict with the same.

However, our decision of the case before us is not dependent upon the validity of this amendatory ordinance, for we think the conclusion reached by Judge McGowan, as stated in his order, is incontrovertible, to the effect that Section 7394 "contemplates that a written protest be offered or presented before or at the time of the advertised public hearing." And it is admitted that the law as thus stated was not in anywise complied with by the appellant.

We are therefore of opinion that this question should likewise be answered adversely to the contentions of the appellant.

It may also be observed that there is nothing in the record from which it could be inferred that the 1950 amendment under attack could be rejected on the ground of unreasonableness. And in this connection we quote the following appropriate paragraph from the brief of appellant's counsel: "We are not asking this court to determine, on the merits, that the zoning statute cannot be amended so as to remove the restrictions on density of population and height of buildings in the area in question; we are merely asking the court to hold that the *manner* in which the amendment in question was adopted was illegal."

There is, however, another matter requiring our consideration, arising from the fact that in the course of the oral

argument of counsel for the respondent, at the bar of this Court, an objection to the jurisdiction of the Court was interposed by them, upon the grounds that there was no appeal from so much of the order of the County Judge as dissolved the temporary injunction previously granted by him; and that the action is not against the city, and should therefore, be dismissed. A written memorandum merely citing three cases was filed with the Court, but no written statement of the jurisdictional objections was filed.

In reply, counsel for the appellant contended that under Rule 8 of this Court the jurisdictional objection could not now be made. And it is provided in this rule that ordinarily no point will be considered which is not set forth in the statement of the questions involved or suggested thereby. However, an objection to the jurisdiction of the subject matter is of such distinctive character that we do not think it is covered by the rule mentioned or any other rule of this Court; although it appears that it might be appropriately provided that any such objection should be submitted in writing.

The objection that there was no appeal from the dissolution of the temporary injunction is clearly untenable, because that was merely incidental to the main decision and followed as a matter of course. But we assume the other point raised as being to the effect that the Court is without jurisdiction of the subject matter; and it is of course a well recognized and highly reasonable principle that if the Court is without jurisdiction of the subject matter, such an objection may be first raised in this Court, and is not waived by a failure to make the question in the Court below; and indeed, without any such objection the Court should *sua sponte* determine such a question if it arises on the record. *Ware v. Henderson,* 25 S. C. 385; *McGrath v. Piedmont Mutual Ins. Co.,* 74 S. C. 69, 54 S. E. 218; *Alexander Sprunt & Son v. Gordon,* 89 S. C. 426, 71 S. E. 1033; and 15 C. J. 844-845, 21 C. J. S., Courts, § 109.

But we do not think the cases cited by counsel for the respondent sustain their jurisdictional objection. The first case, to wit, *Butler v. Ellerbe,* 44 S. C. 256, 22 S. E. 425, was a proceeding in the original jurisdiction to enjoin the defendants, namely, certain State officers, from paying out certain moneys, on the theory that the enabling act was unconstitutional; and the petition was dismissed, apparently on the ground that equitable relief was not warranted. But the majority of the Court held that this action was not against the State, and that the State was not an indispensable party thereto. The case of *Lowry v. Thompson,* 25 S. C. 416, 1 S. E. 141, also cited, was an action against certain State officers, including the Governor, for the recovery of a title deed, but the Supreme Court held "that the action was really against the State, and therefore was not maintainable in any of the courts of the State", in the absence of a statute of consent. The other case, to wit. *Culbertson v. Blatt,* 194 S. C. 105, 9 S. E. (2d) 218, was a proceeding in the original jurisdiction involving the dual office holding provision of the Constitution, and the Court held in substance that the plaintiff was not entitled to an adjudication of the matters involved because he failed to show in his complaint that he had some personal interest in the situation other than that shared in common by the public generally.

Referring to the case before us, the plaintiff as the owner of real property in the area involved could maintain the action; and there can be no doubt that the lower Court and this Court have general jurisdiction of the subject matter, to wit, the determination of the validity of an ordinance of a municipal council.

The general rule is well stated in 37 Am. Jur. 798 as follows: "In at least some, if not all, American jurisdictions, under appropriate circumstances, the validity of municipal ordinances may be tested by *certiorari,* declaratory judgment proceedings. *habeas corpus,* injunction, mandamus, prohibition, and *quo warranto*".

The principle just stated is clearly applicable in this State, as will appear by reference to numerous cases in our reports, and among them is the well considered case of *McCoy v. Town of York,* 193 S. C. 390, 8 S. E. (2d) 905, wherein the Court had under consideration an ordinance which was attacked, and lays down the rules governing judicial inquiry into the validity thereof; and in that particular case the ordinance was held invalid. Other South Carolina cases in point include the following: *Henderson v. City of Greenwood,* 172 S. C. 16, 172 S. E. 689, and *Ward v. Town of Darlington,* 183 S. C. 263, 190 S. E. 826.

It is true that the instant suit was brought against the Building Inspector as such and not formally against the City of Greenville. But it should be observed, in the first place, that the Building Inspector, especially with reference to the zoning law, is not a mere employee of the city, but quiet an important official. As we have previously stated, Code Section 7396 clearly contemplates the appointment of an administrative officer with important official duties; and we quote the following from this section with reference to such officer: "Appeals to the board of adjustment may be taken by any person aggrieved or by any officer, department, board or bureau or the municipality affected by any decision of the administrative officer." It seems from this quotation that the administrative officer has vital executive powers, sometimes *quasi*-judicial. And, as we have heretofore stated, the zoning ordinance of the City of Greenville expressly provides that it shall be the duty of the Building Inspector to enforce this ordinance; in other words, he is the appointed administrative officer referred to in Section 7396; and the ordinance also provides that appeals from his decisions may be made to the board of adjustment. We are therefore of opinion that this action was in effect a suit against the City of Greenville under the principle laid down in the case cited by counsel for the respondent, to wit, *Lowry v. Thompson,* 25 S. C. 416, 1 S. E. 141, *supra*; and also in

the case of *State ex rel. Buchanan v. State Treasurer,* 68 S. C. 411, 47 S. E. 683; namely, that an action may be deemed to be in effect against the political unit itself, although its officer or officers only are named as defendants.

There can be no doubt whatever that this action was so treated by both parties to the cause and their counsel, as well as by the trial Judge. It is true that suits involving the validity of ordinances are usually and properly brought against the city itself, but it may be recalled that at least two of the important reported cases, to wit, *Cleveland v. City Council of Spartanburg,* 54 S. C. 83, 31 S. C. 871, *supra, and Douglass v. City Council of Greenville,* 92 S. C. 374, 75 S. E. 687, 49 L. R. A., N. S., 958, were brought against the City Council only. See also *Newman v. McCullough, Mayor,* 212 S. C. 17, 46 S. E. (2d) 252.

The North Carolina case of *Mack v. Charlotte City Water Works,* 181 N. C. 383, 107 S. E. 244, is, we think, a well considered case, in point here, for it was therein held that an action to recover damages brought against the board of water commissioners of the City of Charlotte was in fact and truth "against the city, and must be so considered and dealt with in determining the rights of parties involved in such a controversy."

And in the Washington case of *State ex rel. Fleming v. Cohn, State Director of Licenses,* 12 Wash. (2d) 415, 121 P. (2d) 954, it was held, upon like principles, that a State or municipal corporation may be considered a party to an action or proceeding brought only against its officers as such, where the political unit must in fact be the real party in interest.

The jurisdictional objection is therefore overruled.

The transcript of record also contains an order of Judge McGowan, dated September 22, 1950, settling the case for appeal; and it appears that counsel for the appellant served notice of its intention also to appeal

from this order, and there is an appendix containing the matter excluded by the trial Judge. However, no reference was made to this appeal in appellant's brief, and hence we deem the same to have been abandoned

Accordingly, the judgment of the County Court is

Affirmed.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.