604 S.E.2d 718

**GLASSCOCK COMPANY, INC., Waste Industries, Inc. and Wilson MacEwen, Appellants,**

v.

**SUMTER COUNTY, Frank Williams, Jr., Naomi Sanders, Carol Burr, Charles Edens, Louis Fleming, James Campbell, Rudy Singleton (members of the County Council) and Waste Management, Inc., Respondents.**

No. 3887.

Court of Appeals of South Carolina.

Heard Oct. 12, 2004.

Decided Nov. 1, 2004.

M.M. Weinberg, Jr., of Sumter, for Appellants.

Harold W. Jacobs, of Charleston, Johnathan Werber Bryan, of Sumter and W. Thomas Lavender, Jr., of Columbia, for Respondents.

KITTREDGE, J.:

This case concerns two contracts for waste disposal services Sumter County entered into with Waste Management, Inc., and whether the award of those contracts complied with local and state laws governing the competitive procurement of public services. The special referee concluded the County's award of these contracts complied with all applicable procurement laws. We agree and affirm.

## FACTS

In 1998, Sumter County Council decided to close the Sumter County landfill and contract with a private firm to have the County's solid waste transported and disposed of in another landfill in neighboring Richland County. To this end, the County Council issued requests for proposals seeking sealed bids from private firms for two service contracts. One contract covered equipping and operating "convenience centers" located throughout the County where residents could dispose of their household garbage (the "collection contract"). The other contract provided for the transportation of municipal

solid waste to a Richland County landfill (the "transportation contract").

Chambers Waste Systems of South Carolina was the successful bidder for both contracts. The collection contract entered into with Chambers was for a period of three years with two one-year options, while the transportation contract was for an initial five-year term with two five-year renewal options. However, shortly after entering into these contracts with the County, Chambers Waste Systems was acquired by Waste Management.

For the next three years, the County and Waste Management continued to operate under the original contracts. By 2001, Waste Management's business in the Midlands had grown substantially. To more effectively service their customers, Waste Management sought to construct or acquire a regional waste transfer station in which solid waste from within a multi-county area could be collected and then transported to its Richland County landfill. In furtherance of this plan, a representative of Waste Management presented a written proposal to Sumter County for the purchase of the Sumter County Transfer Station for $1,300,000. The proposal also called for the extension of the collection and transportation contracts through the year 2021.

The Waste Management proposal was presented in February 2001 to County Council in executive session. Following this closed-door meeting, a council member gave a copy of the Waste Management proposal to James T. Glasscock, Jr., president of Glasscock Company, Inc., a company which is also in the waste disposal business. Mr. Glasscock thereafter began contacting council members, insisting the proposed contract extension be put out for competitive bid. However, because Waste Management's proposal, and particularly its terms, had been improperly disclosed, County Council determined the competitive sealed bidding process urged by Glasscock would be tainted and therefore was no longer feasible.

Council took up the matter of the Waste Management proposal at its next scheduled meeting on April 10, 2001. Several alternatives to the proposal were considered. After some debate, Council passed resolutions to amend the collection and transportation contracts by, among other things, extending their terms as proposed by Waste Management and

agreeing to "sell" its solid waste transfer station to Waste Management.[1]

At its next scheduled meeting on April 24, 2001, Council gave first reading approval to two proposed ordinances— specifically, Ordinances 01–436 and 01–437—authorizing the contract extensions that had been approved by resolution on April 10, 2001. Following second and third readings at the next two scheduled Council meetings and a public hearing, the ordinances approving the contract amendments were formally adopted on May 22, 2001. The addenda to the Waste Management contracts were subsequently executed. These contract extensions were an integral part of the agreement to convey the transfer station to Waste Management. Sumter County's sale of the transfer station is not challenged on appeal. Glasscock seeks only the rescission of the contract extensions authorized by Ordinances 01–436 and 01–437.

## SCOPE OF REVIEW

■ An action for rescission of a contract is equitable in nature. *Brown v. Greenwood School Dist. 50 Bd. of Trustees,* 344 S.C. 522, 525, 544 S.E.2d 642, 643 (Ct.App.2001). While this court may review the record and make findings based on its own view of the preponderance of the evidence as provided in the landmark case of *Townes Associates v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976), the material facts in this case are undisputed. The issues before us on appeal concern only the legal question of whether the County Council's actions complied with local and state procurement laws.

## LAW/ANALYSIS

### I. Compliance with Sumter County Procurement Ordinance

■ Glasscock first argues the referee erred in finding the County Council complied with the Sumter County Procure-

---

1. Although termed a "sale," the then proposed conveyance of the transfer station provided that title to the property would revert to the County in the event Waste Management "ceases to operate the transfer station at the termination of the either of two existing contracts, or any extensions thereof, either through the passage of time or default by [Waste Management] in its performance of the two existing contracts . . . ." (footnote omitted).

ment Ordinance [2] provisions governing the purchase of county service contracts. We disagree.

Section 2–221 of the Procurement Ordinance provides, in pertinent part, that "competitive sealed bidding shall be used for all purchases ... [w]here the purchase price exceeds twenty-five thousand dollars ($25,000.00)." § 2–221(1). Specifically exempted, however, from the competitive procurement requirements are "[c]ontracts that are specifically approved by a county ordinance." § 2–186(A)(1).

As noted above, Ordinances 01–436 and 01–437 approving the amendment of the Waste Management contracts were duly passed by County Council in May 2001. Glasscock claims, however, these ordinances were ineffective to exempt the contract amendments from competitive bidding under section 2–186. He argues the contracts were effectively executed and binding upon the County several weeks before the ordinances were passed when County Council passed its initial resolution approving the contract amendments. Therefore, according to Glasscock, the contract amendments were void because they were not entered into in strict compliance with the Procurement Ordinance. Glasscock argues the subsequent passage of Ordinances 01–436 and 01–437 was simply an attempted remedial measure to imbue illegal contracts with the appearance of compliance with the Procurement Ordinance.

In support of his argument that it was the resolution and not the ordinances that effectively bound the County, Glasscock places heavy emphasis on the trial testimony of County Council member Rudy Singleton. Singleton testified that, based on his informal discussion with several other fellow council members, he thought the Waste Management contract amendments were a "done deal" when the resolution was passed on April 10, 2001.

█ We find this argument is without merit. Glasscock misapprehends the generally accepted function of resolutions as distinguished from ordinances in the conduct of local government legislation. Resolutions do not normally have mandatory or binding effect. Rather, the passage of resolutions is

2. Sumter County Code §§ 2–171 to –268.

generally considered to be merely directory. *See Central Realty Corp. v. Allison*, 218 S.C. 435, 446, 63 S.E.2d 153, 158 (1951) (holding that "it seems to be well settled that a resolution is not a law, and in substance there is no difference between a resolution, order, and motion"); *see also* 56 Am Jur.2d *Municipal Corporations* § 296 (2000) (commenting that "an ordinance is distinctively a legislative act, while a resolution may simply be an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance ..."); 62 C.J.S. *Municipal Corporations* § 247 (Supp.2004) (commenting that "a resolution ordinarily is an act of a special or temporary character, not prescribing a permanent rule of government, but is merely declaratory of the will or opinion of a municipal corporation in a given matter ...").

It is clear here that the adoption of the resolution was simply a first step in the process of County Council's formal, public consideration of the contract amendments. As noted above, following the adoption of the resolution, the contract amendments proposed by the resolution were given formal first, second, and third readings at public County Council sessions followed by a public hearing on the matter noticed several weeks in advance. Indeed, in order to carry out this public process, the Council and Waste Management needed to reach at least a tentative understanding regarding the details of any contract amendments that would ultimately be agreed upon. Such an understanding was needed prior to the period for public comment and hearings in order for specific ordinances to begin their journey through the deliberative process.

Accordingly, we concur with the referee's ruling that County Council complied with the applicable provisions of the Sumter County Procurement Ordinance in adopting the contract amendments through the enactment of Ordinances 01–436 and 01–437.

## II. Compliance with State Statutory Procurement Law

■ Alternatively, Glasscock contends that, even if County Council's adoption of the contract amendments complied with the requirements of the Sumter County Procurement Ordi-

nance, that Procurement Ordinance is contrary to and preempted by applicable state procurement laws.

Section 11–35–50 of the South Carolina Consolidated Procurement Code provides that "[a]ll political subdivisions of the State shall adopt ordinances or procedures embodying sound principles of appropriately competitive procurement no later than July 1, 1983." S.C.Code Ann. § 11–35–50 (Supp.2003). Glasscock contends the Sumter County Procurement Ordinance's exemption from competitive bid requirements for contracts that are specifically approved by county ordinance violates the mandate of section 11–35–50 and is therefore invalid. As such, Glasscock argues, County Council's adoption of the contract amendments by enacting Ordinances 01–436 and 01–437 violated the state procurement code. We disagree.

First, we note that section 11–35–50 does not impose a specific requirement that all public procurement in our state be carried out by way of a single, narrowly defined procedure. While its mandate that all government bodies adopt some form of competitive procurement procedures is unambiguous, the statute's broad directive that the processes chosen "embody[] sound principles of appropriately competitive procurement" clearly was intended to afford local governments needed flexibility to determine what is "appropriately competitive" in light of the public business they must transact.

The state government, for example—operating under the same general approach prescribed by section 11–35–50—provides certain exceptions to the competitive sealed bid rule for state purchases in its procurement code. See S.C.Code Ann. § 11–35–710 (Supp.2003). We find no logic or consistency in recognizing some flexibility at the state level while handcuffing local governments with none.

That local governments should be afforded a reasonable degree of latitude in devising their own individual procurement ordinances and procedures is entirely consistent with our state's now firmly rooted constitutional principle of "home rule." By the ratification of Article VIII of our state constitution in 1973, substantial responsibility for city and county affairs devolved from the General Assembly to the individual local governments. "[I]mplicit in Article VIII is the realiza-

tion that different local governments have different problems that require different solutions." *Hospitality Ass'n of South Carolina v. County of Charleston*, 320 S.C. 219, 230, 464 S.E.2d 113, 120 (1995); *see also Knight v. Salisbury*, 262 S.C. 565, 571, 206 S.E.2d 875, 877 (1974) (opining that the constitutional amendment providing for home rule was "prompted by the feeling that Columbia should not be the seat of county government, and that the General Assembly should devote its full attention to problems at the state level"). In addition, Article VIII mandates that "all laws concerning local government shall be liberally construed in their favor." S.C. Const. art. VIII, § 17. Coordinate with the principle of home rule, South Carolina Code section 4–9–25 empowers counties to enact regulations, ordinances, and other laws provided they are consistent with the general laws of our state. S.C.Code Ann. § 4–9–25 (Supp.2003).

Glasscock urges this Court to construe section 11–35–50 as mandating sealed competitive bids in virtually every instance of public procurement. This approach would effectively strip our state's local governments of any flexibility in determining the competitive procurement policies and procedures appropriate for them to adopt. Indeed, such a reading of section 11–35–50 runs wholly contrary to the home rule authority vested in local government by our constitution. We reject Glasscock's argument.

 In reaching this conclusion, we do not intend to diminish the vital role sealed bidding procurement procedures play in ensuring open, accountable government. To be sure, we recognize the general applicability of competitive sealed bids under the Sumter County Procurement Ordinance. In the present case, however, we address only a narrow exception to that general rule. Whether a contract should be approved by ordinance and therefore exempt from the sealed bid requirement is a function of County Council's discretion, the exercise of which they are accountable for as publicly elected officials. "In reviewing the discretionary decision of a legislative body, our courts have been loath to substitute their judgment for that of elected representatives. Such decisions 'should not be upset on appeal unless [they are] arbitrary, unreasonable, in obvious abuse of discretion, or in excess of lawfully delegated power.'" *Sloan v. Greenville County*, 356

S.C. 531, 555–56, 590 S.E.2d 338, 351 (Ct.App.2003) (quoting *Smith v. Georgetown County Council,* 292 S.C. 235, 238–39, 355 S.E.2d 864, 866 (Ct.App.1987)).

## *CONCLUSION*

For the foregoing reasons we conclude the contract amendments at issue here were validly executed in accordance with the procedures prescribed by the Sumter County Procurement Ordinance. Furthermore, we hold that the exemption from sealed competitive bidding provided for under the Sumter County Procurement Ordinance is valid under our state's mandate that all government bodies employ appropriately competitive procurement procedures. The order of the special referee is therefore

**AFFIRMED.**

HEARN, C.J., and HUFF, J., concur.