694 S.E.2d 532

**Edward D. SLOAN, Jr., individually and on behalf of all others similarly situated, Appellant,**

v.

**GREENVILLE HOSPITAL SYSTEM, a Political Subdivision of the State of South Carolina, and Leighton Cubbage, Chairman of the Board, Respondents.**

No. 26827.

Supreme Court of South Carolina.

Heard April 7, 2010.

Decided June 14, 2010.

Jennifer J. Miller and James G. Carpenter, both of The Carpenter Law Firm, of Greenville, for Appellant.

Boyd Benjamin Nicholson, of Haynsworth Sinkler Boyd, of Greenville, for Respondents.

Justice BEATTY.

Edward D. Sloan, Jr. ("Sloan") sued the Greenville Hospital System ("Hospital") and Leighton Cubbage, Chairman of the Board (collectively, "Respondents"), challenging the Hospital's method of procuring construction services. Sloan contended the Hospital is a state governmental body and must, therefore, comply with the requirements of the South Carolina Consolidated Procurement Code, S.C.Code Ann. §§ 11–35–10 to –

5270 (Supp.2009) ("Procurement Code"). The circuit court ruled the Hospital is a local political subdivision, not a state governmental body as defined by the Procurement Code, and it is not subject to the Code's procurement procedures. The circuit court further found the Hospital's own procurement provisions that were challenged by Sloan complied with state law. Sloan appeals from these rulings. We affirm.

## I. FACTS

Sloan brought three declaratory judgment actions against Respondents challenging the Hospital's procurement procedures for construction services: (1) the Parking Deck Case, (2) the Construction Management Case, and (3) the Request for Qualifications ("RFQ") Case.

In all three actions, Sloan alleged the Hospital is a "political subdivision" of the state of South Carolina that was required to establish, and to abide by, appropriate procurement procedures as required by section 11–35–50 of the South Carolina Code. See S.C.Code Ann. § 11–35–50 (Supp.2009) (stating "[a]ll political subdivisions of the State shall adopt ordinances or procedures embodying sound principles of appropriately competitive procurement"). Sloan alleged the Hospital had violated its own "Policy for the Procurement of Construction and Design Services for the Greenville Hospital System" ("Hospital Policy") in securing the construction services and, moreover, that some of its policies violated section 11–35–50.

In 2005, Sloan was permitted to amend his complaints to allege that the Hospital is a state "board" or "governmental body" as defined by state law and that it must follow the requirements of the Procurement Code. Sloan alleged the Hospital had violated the Procurement Code in its handling of certain construction projects and, in the alternative, if the court deemed the Hospital a local "political subdivision" rather than a state "governmental body," that certain provisions of the Hospital Policy violated section 11–35–50 because they did not embody "sound principles of appropriately competitive procurement." The three actions were consolidated for trial.

Sloan and Respondents filed cross-motions for partial summary judgment on the preliminary issue of whether the Hospital is a "governmental body" as defined in the Procurement

Code. The circuit court granted partial summary judgment to the Hospital, ruling it is not a governmental body as defined by the Procurement Code. The circuit court found the Hospital was, instead, "a political subdivision, and more specifically, a special purpose district." Under this ruling, the Hospital was, therefore, entitled to institute its own procurement procedures.

Thereafter, in an order regarding the Parking Deck Case, the circuit court found the Hospital had improperly utilized the "Sole Source Procurement" method of selecting construction services under the Hospital's own procurement policy and that the contract for this work was, therefore, invalid and void. In a separate consent order, Sloan was awarded costs and attorney's fees of $21,789.95 in this matter. No appeal has been made from the rulings in the Parking Deck Case.

In a subsequent order regarding the two remaining matters, the Construction Management Case and the RFQ Case, the circuit court granted judgment to the Hospital. The circuit court rejected Sloan's argument that several provisions of the Hospital's Policy failed to embody the principles of appropriately competitive procurement as required by section 11–35–50 of the South Carolina Code.

Sloan appeals, arguing the circuit court erred in finding the Hospital was not a governmental body subject to the state's Procurement Code and, in the alternative, if the Hospital is a political subdivision, the Hospital violated its own Hospital Policy in securing the disputed construction projects and several of the policy provisions violate section 11–35–50's mandate that political subdivisions enact ordinances or procedures embodying sound principles of appropriately competitive procurement.

## II. STANDARD OF REVIEW

■ Under Rule 56(c) of the South Carolina Rules of Civil Procedure, a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "An appellate court reviews the granting

of summary judgment under the same standard applied by the trial court under Rule 56(c), SCRCP." *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.,* 386 S.C. 108, 114, 687 S.E.2d 29, 32 (2009) (citing *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000)).

█ A suit for declaratory judgment is neither legal nor equitable; rather, it is determined by the nature of the underlying issue. *Sloan v. Greenville County,* 380 S.C. 528, 534, 670 S.E.2d 663, 666 (Ct.App.2009). "The issue of statutory interpretation is a question of law for the court," and this Court may decide questions of law without deference to the trial court. *Id.* at 534, 670 S.E.2d at 667.

## III. LAW/ANALYSIS

### A. Governmental Body or Political Subdivision

█ Sloan first argues the circuit court erred in finding the Hospital is a political subdivision and not a governmental body as those terms are defined in the Procurement Code. If the Hospital is a governmental body, it is subject to the requirements of the Procurement Code, and if it is not a governmental body, the Hospital must follow the provisions of its own Hospital Policy that it adopted to govern the procurement of construction and design services.

#### *Procurement Code*

The South Carolina Legislature has stated the underlying purposes of the Procurement Code are "to provide increased economy in state procurement activities and to maximize to the fullest extent practicable the purchasing values of funds while ensuring that procurements are the most advantageous to the State and in compliance with the provisions of the Ethics Government Accountability and Campaign Reform Act," as well as "to require the adoption of competitive procurement laws and practices by units of state and local governments[.]" S.C.Code Ann. § 11–35–20(a), (e) (Supp. 2009).

The Procurement Code "applies to every procurement or expenditure of funds by this State under contract acting

through a *governmental body* as ... defined" in the Procurement Code. *Id.* § 11–35–40(2) (emphasis added).

**Governmental Body.** The term "governmental body" is defined in the Procurement Code as follows:

*"Governmental Body" means a state government department, commission, council, board, bureau, committee, institution, college, university, technical school, agency, government corporation, or other establishment or official of the executive or judicial branch.* Governmental body excludes the General Assembly or its respective branches or its committees, Legislative Council, the Office of Legislative Printing, Information and Technology Systems, and all local political subdivisions such as counties, municipalities, school districts, or public service or special purpose districts or any entity created by act of the General Assembly for the purpose of erecting monuments or commissioning art that is being procured exclusively by private funds.

*Id.* § 11–35–310(18) (emphasis added). "State" as used in the Procurement Code "means state government." *Id.* § 11–35–310(32). Sloan alleges the Hospital is a state government board.

**Political Subdivision.** In contrast, the Procurement Code states " '[p]olitical subdivision' means all counties, municipalities, school districts, public service or special purpose districts." *Id.* § 11–35–310(23). Political subdivisions are excluded from the definition of a governmental body and are not subject to the procurement procedures outlined in the Procurement Code. *Id.* § 11–35–310(18).

Section 11–35–50 of Procurement Code requires political subdivisions to develop and adopt their own procurement procedures:

All political subdivisions of the State shall adopt ordinances or procedures embodying sound principles of appropriately competitive procurement no later than July 1, 1983. The Budget and Control Board ... shall create a task force to draft model ordinances, regulations, and manuals for consideration by the political subdivisions.... A political subdivision's failure to adopt appropriate ordinances, proce-

dures, or policies of procurement is not subject to the legal remedies provided in this code.

*Id.* § 11–35–50.

### Hospital's Status

In considering the Hospital's status, the circuit court observed that the Hospital does not perfectly fit into any category, but that its purpose is essentially local and it is not a state "governmental body" as that term is defined by the Procurement Code; rather, it is a "political subdivision," and more particularly, a "special purpose district" serving local needs:

> GHS [the Hospital] does not fit perfectly within the categories that the State Procurement Code creates. As a result, the decision in answering the questions raised in this case is a difficult and close one. In the final analysis, however, GHS was created to serve a local governmental purpose—providing hospital facilities and services in Greenville County. By its very nature, it is local: its Board consists of citizens from the City and County of Greenville; in the past it was funded through Greenville County bond issues; and its original structure came from the City of Greenville. One of the purposes of the State Procurement Code is to allow local political subdivisions the flexibility to choose competitive procurement mechanisms that are appropriate for their purpose. The Court finds that GHS is the type of local political subdivision that this policy objective is meant to cover. Thus the Court holds that GHS is not a governmental body as defined by ... the State Procurement Code. Instead, the Court holds that GHS is a political subdivision, and more specifically, a special purpose district.

**Background of the Hospital's Formation.** The Hospital was created in 1947 by act of the South Carolina Legislature to provide hospital facilities to the residents of Greenville County. 1947 S.C. Acts 432. The legislature observed the city hospital then in existence was insufficient to meet the needs of all of the Greenville County residents and concluded "that the most practical and economical solution of the problem would be for the County of Greenville to take over the hospital, to expand its physical facilities[,] and to operate it for the benefit of all residents of Greenville County." *Id.* § 1.

Because the city was unwilling to convey the existing hospital to the county without some guarantee its future operation would be on a basis satisfactory to the city residents, the legislature created "an independent Board, free from the control of the corporate authorities of the City or the County and charged with the duty of operating said hospital and its expanded facilities for the benefit of the taxpayers and residents of all Greenville County[.]" *Id.* To this end, the legislature "established a Board, to be known as the Greenville General Hospital Board of Trustees." *Id.* § 4. The board was "authorized and empowered to do all things necessary or convenient for the establishment and maintenance of adequate hospital facilities for Greenville County[.]" *Id.* § 5.

In 1965, the legislature "created and established in Greenville County a district to be known as 'Greenville Hospital System District' (the district), which shall include and be comprised of all territory in Greenville County within the boundaries of Greenville County." 1965 S.C. Acts 626, § 2. In the act making this change, the legislature noted "that public hospital facilities in Greenville County are being presently provided by a public agency known as the Greenville General Hospital Board of Trustees (the hospital board)." *Id.* § 1. The legislature found that studies indicated the growth of Greenville County would require a "tremendous expansion of existing facilities," so the legislature decided "to establish a hospital district co-extensive with Greenville County, and to create a commission as the governing agency thereof. . . ." *Id.* The district, acting through the commission, was empowered to issue general obligation bonds. *Id.* § 7.

In 1966, the legislature repealed 1965 S.C. Acts 626, which created the district. 1966 S.C. Acts 1286, § 15. The legislature observed that the Hospital had been expanding using general obligation bonds issued by Greenville County, and that it was changed to a district in contemplation of the district acquiring from the board all existing public hospital facilities in the county and the district being empowered to issue bonds itself, but litigation had ensued challenging the validity of the act and also contending that the district had to follow the debt limitation set forth in the state constitution. *Id.* § 1(6). The legislature noted the trial court had upheld the validity of the

district, but ruled that it must observe the debt limitation. *Id.* § 1(7).

The legislature stated it had further considered the problem while an appeal was being perfected and found that, if the district were to be permitted to issue general obligation bonds, a constitutional amendment had to be adopted. *Id.* § 1(8). Further, the legislature noted that the district was not authorized to function until the Hospital board had conveyed the hospital properties to the district and, since no conveyance had yet been made, the board was still performing the functions committed to it under the Act of 1947. *Id.* The legislature concluded the board should, therefore, continue its functions and decided "to repeal the Act of 1965 in order that public hospital facilities in Greenville County may continue to function under the Hospital Board and in accordance with the authorizations of the Act of 1947." *Id.* By separate act in 1966, the legislature changed the name of the board to "the Greenville Hospital System Board of Trustees." 1966 S.C. Acts 1285, § 1.

In 1999, the Hospital adopted, "[i]n compliance with South Carolina Code Ann. § 11–35–50, and in accordance with the principles of appropriately competitive procurement practices," its Hospital Policy governing the approved procedures for the procurement of construction and design services.

**Sloan's Arguments.** Sloan argues "the clear intent" of the legislature's actions in 1965 and 1966 "was that the Greenville Hospital System Board would continue to operate as a Board created by the General Assembly, and not as a 'special purpose district' or political subdivision." He asserts other districts have been established in the same geographical area; therefore, the Hospital cannot be a special purpose district in the same territory because they would impermissibly overlap. Sloan also contends special purpose districts must have five characteristics: a distinct geographical description, the authority to issue general obligation bonds, taxing authority, inclusion of "district" in the entity's name, and they must serve a local governmental purpose. Sloan states the Hospital does not meet this five-part test.

The circuit court found Sloan's assertion there was an impermissible overlap of districts was without merit, observ-

ing: "Each of the acts creating these subsequently formed hospital districts makes clear that the hospital facilities to be constructed or otherwise acquired in those respective districts are to be operated by GHS [the Hospital]. At most, these subsequent districts were created to provide support to GHS.... The three later districts do not perform the same functions as GHS." *See Wagener v. Smith,* 221 S.C. 438, 445–46, 71 S.E.2d 1, 4 (1952) (" '[T]here cannot be at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdiction, and privileges.' Dillon, Municipal Corporations, (5th Ed.), Vol. I, Sec. 354, page 616.... The foregoing inhibition does not prevent the formation of two municipal corporations coextensive in area for different purposes."); S.C.Code § 6–11–435(B) (2004) (codifying the "overlap rule"). Moreover, the circuit court stated that "none of these districts operate today and [they] are inactive by operation of statute, specifically South Carolina Code Ann. § 6–11–1630."

The circuit court also rejected the five-part test set forth by Sloan, stating the legislature has never defined the term "special purpose district" to mandate inclusion of all five of these parameters and Sloan's "position has no support either in case law or the South Carolina Code." The court observed that "[i]n defining the term 'special purpose district' the General Assembly has consistently determined that one factor that must be present is that an entity must serve a local governmental function or power." [1]

The circuit court noted that, prior to the adoption of home rule in South Carolina, governmental power was concentrated at the state level in Columbia, and counties and municipalities

---

1. *See* S.C.Code Ann. § 6–11–410(a) (2004) (" *'Special purpose district'* shall mean any district created by act of the General Assembly prior to March 7, 1973, and to which has been committed prior to March 7, 1973, any local governmental function."); *id.* § 6–11–810(d) (" *'Special purpose district'* shall mean any district created by act of the General Assembly prior to March 7, 1973, and to which has been committed prior to March 7, 1973, any local governmental power or function."); *id.* § 6–11–1610 ("For the purposes of this article [governing special purpose or service districts], 'special purpose district' means any district created by an act of the General Assembly or pursuant to general law and which provides any local governmental power or function....").

had limited authority to provide services to its citizens. Therefore, the legislature created special purpose districts to fill the void for these needed services.

The provision of hospital services was among the kinds of services made available via special purpose districts. *See Knight v. Salisbury*, 262 S.C. 565, 573, 206 S.E.2d 875, 878 (1974) (stating "[t]he special purpose district has been employed for hospitals, recreational and other purposes"). In *Knight*, this Court observed that in 1973, home rule (in which more authority was vested in local governments) put an end to the practice of creating special purpose districts within a given county, as special legislation relating to one county was no longer permitted; however, any existing units were allowed to continue functioning and county governments began providing services that were previously provided at the local level by special purpose districts. *Id.* at 573–75, 206 S.E.2d at 878–79.

We agree with the circuit court's determination that the true essence of a special purpose district is its scope and its focus on serving local, not statewide, needs. In this case, the Hospital was established to provide medical services to all of the residents of Greenville County, where the existing city hospital was found to be insufficient to meet the increasing demand for services.

Although the word "board" was used in the enabling legislation, it was used in a descriptive, generic sense, as the legislation did not, in actuality, create a board that had statewide authority or impact; rather, it was directed solely to local needs in a limited geographic area, i.e., Greenville County, and was to provide medical services solely in that area. Thus, it was created to serve a local purpose. The board consisted of residents from the city and county of Greenville, the original hospital was built by the city, and part of its funding came from local bond issues. The use of the term "board" or the absence of the specific phrase "special purpose district" is not determinative of the characterization of the entity. *Cf. McLure v. McElroy*, 211 S.C. 106, 110, 44 S.E.2d 101, 104 (1947) (referring to the "governing board" of a public hospital known as the "Union Hospital District" and noting "the district . . . is a governmental subdivision of the State"), *over-*

*ruled in part by Weaver v. Recreation Dist.,* 328 S.C. 83, 492 S.E.2d 79 (1997).

Sloan contends there was no intent that the Hospital function as a special purpose district, but our review of the legislative events leads us to the opposite conclusion. It is readily apparent that the 1966 legislation repealing the act creating the district was passed solely because of the pending litigation regarding the authority of the district to issue bonds, and was done after the trial court had already upheld the validity of the district. The legislative change was simply a temporary solution to allow the board to continue functioning on an interim basis until the legal questions involving the district could be resolved. After home rule was implemented in 1973, however, new special purpose districts could no longer be created within one county, but entities created before 1973 were allowed to continue operating. This complex legislative history makes the question of the Hospital's status difficult, as the circuit court noted, because it does not clearly fall into either category (governmental body or political subdivision), but we hold the circuit court properly resolved the question in favor of finding the Hospital was not a governmental body as that term is defined in the Procurement Code.

▮ The legislative definitions of a "special purpose district" do not contain the five-part test articulated by Sloan and in fact demonstrate the legislature's intent to be as broad as possible so as to encompass the wide variety of entities serving local needs that were created before the adoption of home rule. As the circuit court found, the statutes enumerated above require only that such entities (1) were created by the General Assembly, (2) that they were created prior to March 7, 1973, and (3) that they serve a local governmental function.

This Court has previously recognized that certain entities were special purpose districts, even though they did not possess all of the characteristics in the five-part test asserted by Sloan. *See, e.g., Newman v. Richland County Historic Pres. Comm'n,* 325 S.C. 79, 480 S.E.2d 72 (1997) (observing the Commission is a special purpose district created in 1963 pursuant to 1963 S.C. Acts 69). The Richland County Historic Preservation Commission did not have the authority to tax or

to issue general obligation bonds, and the enabling legislation created it without using the word "district" or otherwise defining its geographical scope.

We hold the circuit court did not err in concluding the Hospital is not a state governmental entity subject to the procurement procedures detailed in the state's Procurement Code; rather, it is a special purpose district that is entitled to, and by law is required to, establish its own provisions embodying sound principles of appropriately competitive procurement as provided by section 11–35–50. The formulation of the Hospital and its board meets the broad parameters of a special purpose district as used in the Procurement Code, as there is no limiting definition that specifies particular requirements other than the essential one of serving a local need or purpose.

## B. Compliance with Hospital Policy

█ Sloan next argues in the alternative that, even if the Hospital is a local political subdivision, the Hospital Policy does not embody sound principles of appropriately competitive procurement as required by section 11–35–50.

### *Overview of the Hospital Policy*

The Hospital Policy was adopted on August 24, 1999 to govern contracts involving construction or design services. Hospital Policy II(B)(1). The Hospital Policy generally applies to "any expenditure of funds by Greenville Hospital System [the Hospital] for construction under contract exceeding $100,000 and for design services under contract exceeding $50,000, except as specifically set forth herein." Hospital Policy II(B)(2).

"Invitation for Bids and Request for Proposals shall be the preferred methods for the selection of construction services." Hospital Policy III(A)(1). Further, "Request for Proposals shall be the preferred method for the selection of construction management services, design services and design-build services." Hospital Policy III(A)(2).

The "Methods of Source Selection" enumerated in the Hospital Policy include (1) Invitation for Bids, (2) Request for Proposals, (3) Sole Source Procurement, (4) Emergency Pro-

curement, and (5) Small Construction Procurement. Hospital Policy III(B).

The Small Construction Procurement method provides: "Any construction procurement not exceeding $350,000 may be made by the Director by the solicitation[ ] of written quotations from a minimum of three qualified sources (or, if in the Director's judgment, there are fewer than three qualified sources, from all qualified sources), and the award shall be made to the lowest responsible/responsive bidder." Hospital Policy III(G). "Director" refers to "the President of Greenville Hospital System or his designee." Hospital Policy II(C)(6).

Under the Sole Source Procurement method, "[a] contract may be awarded for construction or design services without competition when the Director determines in writing that there is only one appropriate, practicable source for the required supply, service, equipment or construction item." Hospital Policy III(E).

### *Challenged Provisions*

On appeal, Sloan contends several provisions in the Hospital Policy do not embody sound principles of appropriately competitive procurement as required by section 11–35–50. For example, Sloan asserts the Hospital Policy generally sets thresholds of $100,000 and $350,000 for application of the policy, whereas the state's Procurement Code, and other, regional codes, contain a $25,000 threshold.[2] Sloan also asserts the Hospital Policy "fails to require competitive sealed bidding as the presumptive method of source selection." Sloan argues competitive sealed bidding is provided for in the state's Procurement Code, the Model Procurement Ordinance for Local Governments prepared by the Special Task Force on Local Government Procurement of the South Carolina Budget and Control Board, and in other local codes; therefore, the

---

**2.** The Procurement Code currently provides that "[c]ontracts greater than *fifty thousand dollars* must be awarded by competitive sealed bidding except as otherwise provided in Section 11–35–1510." S.C.Code Ann. § 11–35–1520(1) (Supp.2009) (emphasis added). This threshold was increased from $25,000 after the time the contracts at issue here were executed. 2006 S.C. Acts 376, § 25 (effective June 13, 2006).

Hospital's "departure from this presumption cannot be deemed to embody 'sound principles of appropriately competitive procurement.' "

The circuit court ruled Sloan failed to meet his burden of proving the challenged provisions did not comply with section 11–35–50 and granted judgment to the Hospital.

The court began by noting that "Sloan essentially argues that because the Hospital's Policy does not follow several other procurement codes, most notably the State's Consolidated Procurement Code, the State Local Model Procurement Code, and the ABA Model Procurement Code, the [Hospital] Policy fails to embody sound principles of appropriately competitive procurement and thus conflicts with State law."

The court observed that Sloan argues that these are "community standards" that demonstrate a collective "legislative judgment" as to whether or not certain procurement policies are appropriately competitive. The court rejected Sloan's argument, stating the general assertion that these other codes set some formula that South Carolina is compelled to follow must fail in the absence of other proof.

The court stated that requiring local government to follow the "collective judgment" of other codes would effectively stifle innovation in the procurement practices of local government. The court noted both the state's Procurement Code and the Model Procurement Ordinance were adopted in the early 1980s, so relying upon these sources in determining if something meets the "appropriately competitive" standard would result in stagnation and the inability to adopt newer and more innovative procurement methods.

Moreover, the court found that Sloan's argument conflicts with the Procurement Code itself as "there is simply no requirement that entities like the Hospital enact [procedures] that are the same as, or even similar to, the State Consolidated Procurement Code." The court explained, "By conscious decision of the legislature, ... local governments are not subject to the State Procurement Code" and "[n]either are local governments required to adopt provisions similar to those of the State Code."

In *Colleton County Taxpayers Association v. School District of Colleton County*, 371 S.C. 224, 638 S.E.2d 685 (2006), this Court held that the legislature's repeal of a provision in the Procurement Code had no relevance to the validity of an identical provision contained in the School District's procurement policy. We rejected the plaintiffs' suggestion that the repeal amounted to a determination that the School District's provision no longer embodied "sound principles of appropriately competitive procurement" within the meaning of section 11–35–50. *Id.* at 241, 638 S.E.2d at 694. We further held that the plaintiffs' "blanket conclusion" that the School District's provision must be inappropriate because it was no longer in the Procurement Code, without incorporating any supporting authority, effectively constituted a waiver of their argument. *Id.*

In the current appeal, the circuit court relied upon the *Colleton County* case in finding the provisions of the Procurement Code are "irrelevant" to what constitutes "sound principles of appropriately competitive procurement" and in determining local "procurement codes need not mirror the State Consolidated Procurement Code, the Local Model Code, or any other code."

This determination is supported by the fact that the chairman of the Task Force expressly stated in his cover letter presenting the Model Procurement Ordinance to the chairman of the South Carolina Budget and Control Board that the "ordinance is a recommended model and in no way is to be construed as a document which must be mandatorily adopted by any political subdivision." The chairman expressly stated: "There is no requirement that the political subdivision would even have to consider this particular model. It is to be used for assistance and information only."

We hold the circuit court properly ruled Sloan has not met his burden of establishing that any of the challenged provisions failed to meet the requirements of section 11–35–50. Sloan's sole objection to these provisions is that the Hospital Policy does not mirror the terms of the Procurement Code, the Model Procurement Ordinance, and other regional codes. Sloan appears to apply a reverse presumption, i.e., that the challenged provisions in the Hospital Policy are *presumptively*

*invalid* because they vary from the terms contained in the sources used for comparison. We agree with the circuit court that this difference, standing alone, is not enough to deem the Hospital Policy in violation of the statute's mandate to adopt "sound principles of appropriately competitive procurement."

As our courts have recognized, section 11–35–50 does not specify any particular procedures that are considered to embody the "appropriately competitive" standard; rather, the statute "clearly was intended to afford local governments needed flexibility to determine what is 'appropriately competitive' in light of the public business they must transact." *Glasscock Co. v. Sumter County*, 361 S.C. 483, 490, 604 S.E.2d 718, 721 (Ct.App.2004).

In *Glasscock*, the court rejected the argument that section 11–35–50 should be construed to mandate sealed competitive bidding in almost every instance of public procurement, explaining: "This approach would effectively strip our state's local governments of any flexibility in determining the competitive procurement policies and procedures appropriate for them to adopt. Indeed, such a reading of section 11–35–50 runs wholly contrary to the home rule authority vested in local government by our constitution." *Id.* at 491, 604 S.E.2d at 722; *cf. Charleston County Sch. Dist. v. Leatherman*, 295 S.C. 264, 368 S.E.2d 76 (Ct.App.1988) (observing state law requires a school district's proposed procurement code to be "substantially similar" to the state Procurement Code, a requirement that is not imposed universally). Accordingly, we find no merit to Sloan's argument that the Hospital Policy is improper because it varies from the provisions contained in other local procurement and model codes.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's orders, which found the Hospital is not a state governmental body subject to the Procurement Code, but rather, is a local political subdivision, and that its own procurement procedures, as contained in its Hospital Policy, complied with state law.

**AFFIRMED.**

TOAL, C.J., KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES.

I concur in the majority's decision to uphold the trial judge's ruling in favor of the respondents, but would do so on the ground that appellant lacks standing to bring this action. Rule 220(c), SCACR; *compare Sloan v. Dept. of Transp.*, 379 S.C. 160, 666 S.E.2d 236 (2008) (Pleicones, J., dissenting); *Sloan v. Dept. of Transp.*, 365 S.C. 299, 618 S.E.2d 876 (2005)(Pleicones, J., dissenting).