14745

DeLOACH v. SCHEPER *ET AL.*, BOARD OF COUNTY DIRECTORS

(198 S. E., 409)

22

*Mr. Wm. N. Levin,* for petitioner,

*Mr. W. Brantley Harvey,* for respondents,

August 26, 1938.

*Per curiam.*

This matter, heard by permission in the original jurisdiction of the Court, is a controversy without action, under Section 668, Code of 1932, being submitted upon an agreed case, containing the facts upon which the controversy depends. The petitioner is a resident taxpayer of Beaufort Township in Beaufort County. He seeks to permanently enjoin the respondents, who constitute the Board of County Directors of Beaufort County, from issuing $300,000.00 of general obligation bonds of Beaufort, Sheldon, and St. Helena Townships, in Beaufort County. Unless restrained by this Court, respondents intend to proceed with the issuance and sale of these bonds, the proceeds of which are to be used, along with a grant of $235,000.00 from the Federal Emergency Administration of Public Works, to defray the cost of building two bridges in St. Helena Township, Beaufort County, across Harbor River and Johnson's Creek to Hunting Island.

Hunting Island is one of South Carolina's barrier islands which is now owned by the South Carolina State Forestry Commission. Previous to 1936 the greater portion of this island was owned by Dr. Arthur W. Elting and the Honorable James M. Cameron. The remaining portion was owned by the United States Government. In that year Dr. Elting and Mr. Cameron conveyed their interest in the island to Beaufort County upon the condition that it be developed as a park and game sanctuary. During this year the United States conveyed its interest in Beaufort County on similar conditions. Subsequently the county conveyed the entire Island to the State Forestry Commission subject to the same conditions as appear in the respective deeds of conveyance to it. That latter body now proposes to develop the island as a park and game sanctuary in order to carry out the purposes of the grant. At the present time the island is inaccessible save by boat and in order to properly develop it it will be necessary to build two bridges from St. Helena Island

to Hunting Island. The Board of County Directors has employed an engineer who has estimated the costs of these bridges at $535,000.00; the grant to be obtained from the Federal Emergency Administration of Public Works will approximate $235,000.00. To raise the $300,000.00 needed for the sponsor's share the Board of County Directors proposes to issue these bonds.

Apparently two methods of financing the project were provided by the General Assembly in 1936. These appear as Acts 1028 and 1029 of the Statutes at Large for 1936. The first of these Acts, approved the 21st day of May, 1936, authorized the Board of County Directors to issue and sell not exceeding $300,000.00 of general obligation bonds of Beaufort County. The second of these Acts authorized the Board of County Directors to issue and sell $300,000.00 of bonds of any township or group of townships in the county to raise these funds. Beaufort County is divided into townships which have for many years been recognized as political subdivisions.

During the 1938 session of the General Assembly an effort was made to amend Section 2 of Act No. 1029. The title of the amendatory Act, Act 1016, is as follows: "An Act to Provide for the Levy of Taxes for County, School and Other Purposes, for the Year 1938-1939 and Direct the Expenditure Thereof in Beaufort County, and Amend a Joint Resolution Known as Act No. 1029 of the Acts of 1936."

It is conceded that this statute is the vehicle for appropriations for Beaufort County for the current fiscal year and is commonly referred to as a Supply Bill. It is under the provisions of Act 1029, as amended by the 1938 Statute, that the Board of County Directors has acted in adopting resolutions providing for the bond issue sought to be restrained in this action.

The petition sets forth some seven grounds of objection to the issuance of these bonds. It attacks the constitutionality of the amendatory statute of 1938, the statute as amended,

and the statute in unamended form. Petitioner's counsel has presented a thorough brief contending that the Board of County Directors is without power to issue the bonds.

"Here the citizen's claim of fundamental right under government is to be weighed against the claim of lawful community enterprise and development. The grave issue ought to compel care and dignity in presentation as the only fitting aid to true and just judgment."

The Board of County Directors on the other hand feel assured of the soundness of their position and seem convinced that the project which they have undertaken is one that will inure to the benefit of the community. With these matters before us we must now proceed to undertake a disposition of the questions raised by the petition. To do this makes it necessary that we discuss the constitutionality of the amendatory Act of 1938, the constitutionality of the Act as amended, and finally the constitutionality of the original Statute of 1936. In doing this we must bear in mind and apply the principle that it is the duty of the judiciary to uphold the constitutionality of a statute unless its invalidity is manfest beyond reasonable doubt, and unless it is clearly violatve of some provision in the Constitution.

The questions to be decided by this Court are well expressed in the petitioner's brief under the heading, "Questions Involved." We shall discuss them in the order there enumerated.

The first question there stated is: (1) Does the Beaufort County Supply Bill for 1938-1939 relate to more than one subject, in violation of Article 3, Section 17?

That provision of the Constitution provides that each Act or Resolution, having the force of law, shall relate to but one subject and that shall be expressed in the title. There is no doubt but that this section of the Constitution is a wise provision, intended to apprise the members of the General Assembly of the contents of an Act by reading the title and to

prevent legislative log-rolling, A third reason given for the insertion of this provision in the Constitution has been said to be to inform the people of the State of the matters with which the General Assembly concerns itself. It must be conceded that there can be no objection to the amendatory provisions contained in the 1938 Statute, insofar as they are unrelated to the subject as expressed in the title. The title very clearly and definitely states that the purpose of the Act is to provide for the fiscal affairs of Beaufort County for the year 1938-1939 and to amend a Joint Resolution, No. 1029 of 1936, which is the vehicle for the issuance of these bonds. Is is contended, however, that the Act itself relates to more than one subject and for this reason is unconstitutional. In order to determine this question it is well to consider the applicable rules of construction. In the first place, there is a marked distinction between the object of a law and the subject of a law. Very few enactments have but one object or purpose in mind. A striking example of the distinction between the objects of an Act and its subject is found in the statute attacked on similar grounds in the case of *State ex rel. Coleman v. Lewis,* 181 S. C., 10, 186 S. E., 625. The opinion in that case shows there were some five objects which the Legislature wished to reach in the passage of that Act, but, as the Court observed, the Act "showed that it related to but one cognate subject."

An examination of the amendatory Act or Supply Bill of 1938 shows that among its purposes were the ordinary expenditures of county, schools and townships in Beaufort County, a tax levy to provide funds therefor and the amending of Act 1029 of 1936. As already observed, both of these objects are expressed in the title. The Act also relates to other objects which need not be set forth here. The sufficiency of them does not concern us since their insertion cannot affect the portions of the statute now under discussion. If, for any reason, it can be said that those objects do not relate to the subject of the Act, or that, because of their insertion, the Act relates to more than one subject,

those provisions might fall but not the remaining part of the Act. On that question, however, we express no opinion.

It cannot be questioned that the primary purpose or object of this Act is the fiscal affairs of Beaufort County for the current year. It must, therefore, be determined whether that portion of the statute which seeks to amend the Joint Resolution of 1936 relates to the subject of the fiscal affairs of Beaufort County, for the constitutional provision here invoked does not preclude the Legislature from dealing with several branches of one general subject in a single Act. 59 C. J., 802. With the application of this principle, the difficulty of the problem disappears. The Supply Bill relates to the general subject of the fiscal affairs of Beaufort County and its political subdivisions. So does that portion of the Act which has to do with the issuance of bonds by certain of its townships. For these reasons we hold that the 1938 Statute is valid and accomplishes the purposes it set out to do in amending the Joint Resolution passed in 1936.

It is next contended, in Question 2, that the issuance of these bonds is unconstitutional because it necessitates the levy of a discriminatory tax on certain property in Beaufort County, and, in Question 3, that townships are wrongfully taxed for improvements outside their boundaries. The objection here is that the tax falls only on three townships of Beaufort County and not on the remaining townships. It seems to us, however, that what has been done here is to group several political subdivisions together to cooperate in a venture which will inure to the benefit of them all. There can be no objection to this. *Battle v. Willcox,* 128 S. C., 500, 122 S. E., 516; *Askew v. Smith,* 126 S. C., 159, 119 S. E., 378; *Evans v. Beattie,* 137 S. C., 496, 135 S. E., 538; and *Park v. Greenwood County,* 174 S. C., 35, 176 S. E., 870. It does not follow that simply because the bridges when completed lie wholly within St. Helena Township all benefits are limited to that township. On the contrary, it will be seen that the benefits will fall

on all the territory which lies within the three townships. The same objection was raised in *Evans v. Beattie, supra;* there it was contended. that the coastal highway would not equally benefit the counties comprising the Coastal Highway District. This Court pointed out that the benefits did not fall only on property contiguous to that highway, but likewise fell on property in the surrounding territory. We are satisfied with the sufficiency of the corporate purpose.

Or, viewing the matter from a different angle, in effect a new political subdivision has been created, and the bonds to be issued are obligations of that subdivision. The tax to be levied falls equally on all property therein and there has been no violation of the constitutional provisions invoked. The question of such power in the Legislature has been decided by this Court previously. In fact, it has been decided in a case from Beaufort County. *Fripp v. Coburn,* 101 S. C., 312, 85 S. E., 774. In that case the Legislature enacted a statute which provided for the issuance of bonds of the townships of Beaufort and St. Helena to obtain funds with which to build a bridge from the Town of Beaufort, in Beaufort Township, to Lady's Island. The Court said (page 775) : "It [the Legislature] had the right to create new townships or consolidate old townships, either permanently or for a special purpose. It did consolidate these two townships for the purpose of * * * the issuance of the bonds."

What was done in that case has been done here.

The fourth question makes an attack against the corporate existence of the townships which are to issue the bonds. It contends that their territorial limits are not sufficiently defined to give a tax levy on the property lying within their boundaries the certainty required by Article 10, Section 3. Counsel on both sides concede that their searches fail to reveal any statute which created the various townships in Beaufort County. However, it does not follow that this is a fatal defect to their corporate existence. In the case of *Fleming v. Royall,* 145 S. C., 438, 143 S. E., 162, this

Court quoted with approval the following from the text in Dillon on Municipal Corporations: "So corporate existence may be inferred and judicially noticed although the incorporating act or charter cannot be found, if the fact of incorporation is clearly recognized by subsequent legislation not in contravention of any constitutional provision respecting the mode of creating corporations." (Page 168.)

It has been conceded that the various townships of Beaufort County have been in existence for many years and prior to the adoption of the Constitution of 1895. That document recognized that many counties were divided into townships. In Section 11, of Article 7, is to be found: "Each of the several townships of this State, with names and boundaries as now established by law, shall constitute a body politic and corporate."

Repeated statutory references may be found recognizing the existence of these townships. As pointed out in the case of *Fripp v. Coburn, supra,* as early as 1911 the townships of Beaufort and St. Helena joined in the issuance of bonds. Countless references are found in the various Supply Acts referring to first one township and then another. In the statutes creating the Board of County Directors of Beaufort County their existence is further recognized (see Section 4021, 1934 Supplement to the Code of Laws of 1932). The membership of that body consists, of six individuals, one of whom comes from each of the townships of Beaufort, Sheldon, Yemassee, Bluffton, St. Helena and Hilton Head. The attack made here cannot be sustained.

Some doubt would seem to exist as to the correct boundaries of St. Helena Township. The Board of County Directors has determined that this township includes both Lady's Island and St. Helena's Island. As proof of their alleged error, the petitioner points out that the amendatory provision of the 1938 Act refers to Lady's Island as a separate township. Even if he is right there would seem to be little doubt as to the territory which is to be subjected to the

burden of this tax levy for the resolution specifically provides that the tax shall be levied on both Lady's Island and St. Helena Island and hence complies with the provisions of the amendatory statute. It, therefore, does not matter what the corporate name of this territory may actually be. In fact, we know of no objection to a political subdivision adopting an alias. However, it would seem that the contention of the respondents is correct as the statute creating the Board of County Directors attempts to give representation to each of the townships and no reference is found in it to a township known as Lady's Island Township. This is further borne out by the 1911 statute, attacked in *Fripp v. Coburn, supra.* There the townships of Beaufort and St. Helena were authorized to issue bonds to build a bridge between the Town of Beaufort, in the township of Beaufort, and Lady's Island. Quite obviously Lady's Island must have been then considered a part of St. Helena's township. No statute changing this situation has been enacted.

Again in 1926 we find the Legislature recognizing the fact that Lady's Island is a part of St. Helena Township. In that year an Act was passed, being Act 704 of the Acts of 1926, and appearing at page 1429 of the Statutes at Large for that year. In it we find the following language: "The Board of Directors of Beaufort County are hereby charged with the construction of a road and such necessary bridges in St. Helena Township in said county, to wit: From the foot of the bridge leading from Beaufort across Beaufort River on Lady's Island to Bay Point  *  *  *." Section 1.

The next question raised by the petitioner is highly technical. He contends that the Board of County Directors has exceeded the power given to it under the statute authorizing the issuance of these bonds. He contends that the amount of the annual tax levy must be limited to such millage as will produce, together with the estimated income from the toll bridges, a sum sufficient to meet the payment of principal and interest. The Board has directed that an annual levy

be made to meet these payments which may be reduced in any given year by only the amount of funds actually on hand that were produced by the tolls. The respondents point out that if the contention of the petitioner is correct the bonds will, in all likelihood, be unsalable for, if the estimate proves·faulty, a deficiency will ensue in the amount needed for the payment of the interest or principal. Section 3 of the Joint Resolution, 39 St. at Large, p. 1990, does contain the following proviso: "Provided, That the auditor in levying said taxes shall take into consideration estimated revenue from the toll bridge hereinafter provided for, and shall only levy sufficient taxes which added to the estimated tolls to·be sufficient to pay such interest and retire said bonds."

However, what the petitioner overlooks is Section 2. There it is provided that: "The Beaufort County Board of Directors be, and they are hereby, authorized and directed upon the written request of the Senator and the Members of the House of Representatives of Beaufort County to issue and sell township or townships general obligation bonds not to exceed $300,000.00."

■  General obligation bonds mean but one thing. They are bonds payable from an unlimited general *ad valorem* tax on all taxable property. If the petitioner's construction of Section 3 be correct, then the whole legislative intent is completely and fully destroyed.

■  The cardinal principle of statutory construction is that the meaning of a statute is not to be looked for in any single section but in all the parts together and their relation to the end in view. *Crescent Manufacturing Company v. South Carolina Tax Commission,* 129 S. C., 480, 124 S. E., 761; *State v. Columbia Railway, Gas & Electric Company,* 112 S. C., 528, 100 S. E., 355; *Lytle v. Southern Railway—Carolina Division,* 171 S. C., 221, 171 S. E., 42, 90 A. L. R., 915. In the last cited case it is said (page 43): "It is not by detached words and phrases that

a statute ought to be expounded. The whole act must be taken together and a fair interpretation given to it, neither extending or restricting it beyond the legitimate import of its language, and its obvious policy and object."

It is plain that the intention of the Legislature here █ is to permit the issuance of general obligation bonds. It is in order to quote the sixth question appearing in the petitioner's brief: "Is Act 1029, of 1936, void as violative of Article 1, Section 14, in conferring executive powers upon members of the Legislature?"

This question arises from specifications numbered 6 and 7(a) of his petition. In Specification 6 it is contended that Section 1 of the Joint Resolution sets up as a condition precedent to the issuance of these bonds a valid conveyance by Beaufort County of Hunting Island to either the South Carolina State Commission of Forestry or the National Park Service and that no valid conveyance has been made in that, the conveyance made was bottomed on the request of the Senator and the Members of the House of Representatives from Beaufort County and is null and void, as an unconstitutional attempt on the part of the Senator and Members of the House of Representatives from Beaufort County to exercise executive functions. In Specification 7(a) it is contended that the bonds cannot be issued inasmuch as Section 2 of the Act authorizes their issuance only upon the written request of the Senator and Members of the House of Representatives from Beaufort County, and that this provision is likewise void as an attempt to exercise executive powers.

It can be said, in answer to the sixth specification of ██ ██ unconstitutionality in the petition, that the issuance of these bonds is not made conditional upon a valid conveyance of Hunting Island and that the issuance of the bonds may take place even without such conveyance. It is perhaps unnecessary to answer the objections set forth in Specification 7(a), because our holding sustaining the validity

of the amendatory Act of 1938 removes this objection from the case. But since we are of the opinion that this action of the Senator and Members of the House of Representatives are not of an executory nature, it is proper to give further consideration to those questions. This Court, in the recent case of *Bramlette v. Stringer*, 186 S. C., 134, 195 S. E., 257, attempted to emphasize the fact that Section 14, of Article 1, which reads: "In the government of this State the legislative, executive and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other," means precisely what it says, and that one who holds office in the Legislature may not exercise functions belonging to or vested in other branches of the government. However, in that case we were careful to point out that its holding did not prevent the members of the General Assembly from exercising duties of a supervisory nature.

Under the provisions of the Act contested in this case the Legislative Delegation has not one word to say about what amount of bonds should be issued. It cannot say when they are to be issued, or on what terms, nor has it anything to do with the expenditure of the proceeds from their sale. All of these acts, being peculiarly executive in nature, are delegated to an executive body. However, it is to be noted that the Act does not contemplate that the whole cost of the bridges is to borne by the townships. The preambles show that a grant from the United States Government was expected to be obtained to aid in the cost of this construction. The preambles also show that the cost of erecting the approaches was not to be paid from the proceeds of the bonds. However, at the time of the passage of the Act these material factors could not be determined. It seems to us clear that the legislative intent was to make the issuance of the bonds dependent upon definite assurance that the project would be completed. It did not desire that bonds be issued

and the proceeds placed in some bank until these factors could be determined. Its wish was to insure the taxpayers against just such an occurrence. All it did was to exercise a power of supervision properly belonging to it. While the question is· a close one, we do not feel that the rule laid down in the *Bramlette case* is applicable.

But even though it be said that the provisions contained in Sections 1 and 2 are in themselves objectionable for the reason that they confer powers of an executory nature upon a part of the legislative branch of the government, a further reason can be given to sustain the actions of the respondents in issuing these bonds. Where part of a statute is constitutional and a part unconstitutional the former may be sustained in proper cases while the latter falls. *Gillespie v. Blackwell,* 164 S. C., 115, 161 S. E., 869. Before making such a holding, however, the Court must determine that by striking out the unconstitutional part of the Act the legislative intent will not be destroyed. This requires us to determine what the legislative intent was in the enactment of this statute. That it was to issue bonds to build these bridges is very apparent. It had this right and it could authorize the bonds to be issued by the Board of County Directors .of Beaufort County. Consequently, if it be said that it did not have the right to make the issuance of these bonds dependent upon the request of the Senator and Members of the House from Beaufort County the legislative intent will be carried out by deleting from Sections 1 and 2 the words, "Upon the written request of the Senator and the Members of the House of Representatives from Beaufort County." It is our opinion that the constitutional portion of the foregoing Act should be allowed to stand so that the very clear legislative intent may be carried out.

Our holding with regard to the validity of the amendatory provisions of the 1938 Act makes it unnecessary to discuss the seventh question raised in the petitioner's brief, set out in Specification 7(b) of his peti-

tion. The portion of the Act which is there attacked has been removed by the amendment. As originally enacted, Section 2 of the Act authorized the Board of County Directors of Beaufort County to "issue and sell township or townships general obligation bonds  *  *  *." The petitioner contends that this provision gave to the Board of County Directors the right to set up the particular political subdivision whose bonds were to be issued. He contends that this is an improper delegation of legislative authority which cannot be delegated to any body or commission regardless of the wisdom or patriotism of that particular body. Concededly, the Legislature cannot delegate to some administrative board the right to say what territory shall be included within a political subdivision, for this is a duty which is devolved by law upon it and one which it, and it alone, must exercise, However, the Legislature has not done this. It has merely permitted certain townships in Beaufort County to cooperate with each other to execute a common purpose. No new political subdivision is created and as we have already pointed out there is no objection to several political subdivisions grouping themselves together to cooperate in a venture which will inure to the benefit of them all. It is necessary, however, that this venture be a proper one, or, expressed differently, a corporate purpose of each of the townships which enter into the group. All that has been left to the discretion of the Board of County Directors, which happens to be the governing body of the townships, is to name the townships to whom this venture will be a corporate purpose.

The settled maxim of constitutional law that power conferred upon the Legislature to make law cannot be delegated by that body to any other body or authority is tested by determining whether the Act is complete in itself when it leaves the Legislature.

There is no constitutional reason why legislative functions which are merely administrative or executive in their character should not be delegated by

that branch of the government to other departments and there is a distinction between delegation of power to make a law and a grant of authority relative to its execution, even though the latter may involve the execution of discretion under and in pursuance of the law. It must be borne in mind that the Legislature is only in session for a short period each year and from the necessity of the case must devolve upon administrative or executive boards functions which, on their face, may appear appertaining to the legislative. And we must also bear in mind that while this principle of constitutional law is unquestionably true, and must be given full force and effect, and should not be improperly extended for any consideration of convenience, or supposed necessity, nevertheless on the other hand, it must not be construed too broadly, for by doing so we would hinder even our most commonplace functions of administrative government.

In the case of *State v. Moore,* 152 S. C., 455, 150 S. E., 269, the action of the Legislature in delegating unto the State Highway Department two alternative methods from which to choose to finance the building of our highway system was attacked as an improper delegation of power. In that case this Court held that the Act when it left the Legislature was complete in itself and there was nothing the Highway Commission could do to detract from or add to it and consequently there was no improper .delegation of power. Here we find the same situation for instead of having two methods of financing the project it is possible to have more than two for conceivably it could be a corporate purpose of each of the townships of Beaufort County to join in this venture. While a slight factual distinction may be drawn between the two cases the principle of law is the same and must govern. We, therefore, hold that the power thus vested in the Board of County Directors of Beaufort County to determine which townships should join together in the issuance of these bonds is not an improper delegation to that body.

For the reasons given, the judgment of the Court is that the temporary injunction heretofore issued be dissolved and the petition dismissed. And it is so ordered.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER, and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.