608 S.E.2d 579

Edward D. SLOAN, Jr., individually, and as a Citizen, Resident, Taxpayer and Registered Elector of South Carolina, and on behalf of all others similarly situated, Petitioners,

v.

David H. WILKINS, in his officially capacity as Speaker of the S.C. House of Representatives, R. Andre Bauer in his official capacity as Lt. Governor and President of the S.C. Senate, and the State of South Carolina, Respondents.

Glenn F. McConnell, in his capacity as President Pro Tempore of the South Carolina Senate, Intervenor.

No. 25933.

Supreme Court of South Carolina.

Heard Dec. 2, 2004.

Decided Jan. 28, 2005.

434

James G. Carpenter and Jennifer J. Miller, both of the Carpenter Law Firm, P.C., of Greenville, for Petitioners.

Attorney General Henry D. McMaster, Assistant Deputy Attorney General Robert D. Cook, and Assistant Deputy Attorney General J. Emory Smith, Jr., all of Columbia, for Respondent State of South Carolina.

Michael R. Hitchcock, S. Phillip Lenski, Jennifer L. Parrish, all of Columbia, for Respondent State of South Carolina Senate and Intervenor.

Charles F. Reid, Robert R. Smith, II, Benjamin P. Mustain and Patrick G. Dennis, all of Columbia, for Respondent South Carolina House of Representatives.

Dwight F. Drake, William C. Hubbard, C. Mitchell Brown, all of Nelson, Mullins, Riley & Scarborough, of Columbia,; and Keith D. Munson and Heather Ruth, both of Womble, Carlyle, Sandridge & Rice, P.L.L.C., of Greenville, for Amicus Curiae.

Justice WALLER:

This matter is before us in our original jurisdiction to determine whether Act No. 187, 2004 Acts (the Act), violates the one subject requirement of Article III, section 17, of the South Carolina Constitution.[1]

## FACTS

On March 17, 2004, the General Assembly enacted Act No. 187, 2004 Acts (commonly referred to as the Life Sciences Act). The Act is comprised of twenty-one separate sections, and includes a Life Sciences Act, the Venture Capital Investment Act, the South Carolina Research University Infrastructure Act, an act relating to Public Institutions of Higher Learning, and numerous other subjects as will be discussed below. In passing Act No. 187, the Legislature overrode the Governor's veto.[2] Sloan filed a petition in this Court's original jurisdiction seeking a declaration that Act 187 violates Article

---

1. "Every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." S.C. CONST. Art. III, § 17.

2. The veto was based upon the Governor's "fundamental objection to receiving legislation that has numerous tack-ons, each containing their own complex policy considerations, many of which did not receive appropriate public debate."

III, § 17 (the one subject provision) of the South Carolina Constitution. We granted the petition.[3]

## ISSUES

1. Does Sloan have standing to challenge Act No. 187?
2. Does Act No. 187 violate Article III, § 17 and, if so, are the offending provisions severable?

### 1. STANDING

Respondents assert Sloan is without standing to proceed with this action.[4] We disagree.

As a general principle, a private individual may not invoke the judicial power to determine the validity of an executive or legislative act unless the private individual can show that, as a result of that action, a direct injury has been sustained, or that there is immediate danger a direct injury will be sustained. *Joytime Distribs. & Amusement Co., Inc. v. State,* 338 S.C. 634, 639, 528 S.E.2d 647, 649–650 (1999). However, "the rule [of standing] is not an inflexible one." *Thompson v. South Carolina Comm'n on Alcohol & Drug Abuse,* 267 S.C. 463, 467, 229 S.E.2d 718, 719 (1976). Standing may be conferred upon a party "when an issue is of such public importance as to require its resolution for future guidance." *Baird v. Charleston County,* 333 S.C. 519, 531, 511 S.E.2d 69, 75 (1999). Recently, both this Court and the Court of Appeals have granted standing in cases of important public interest. *See Sloan v. Sanford,* 357 S.C. 431, 593 S.E.2d 470 (2004) (standing to challenge governor's commission as an officer in the Air Force reserve); *Sloan v. Greenville County,* 356 S.C. 531, 548, 590 S.E.2d 338, 347 (Ct.App.2003) (standing to bring declaratory judgment action alleging county failed to

---

3. We also granted intervenor status to Senator Glenn McConnell as President *Pro–Tempore* of the Senate, and granted requests to file amicus briefs to ChangeSCNow and to the University of South Carolina Development Foundation, Medical University of South Carolina Foundation for Research Development, and Clemson University Foundation, Inc.

4. By "Respondents," we are speaking of the General Assembly. Although the Attorney General is also technically a respondent, his brief is more in line with that of Petitioners.

comply with ordinances governing procurement of construction services on design-build public works projects).

■ In light of the great public importance of this matter, we find Sloan has standing to maintain this action.

## 2. ONE SUBJECT/ SEVERABILITY

■ Sloan asserts Act 187 violates the one subject requirement of Article III, section 17. We agree.

Act No. 187 contains the following provisions:

1. The Life Sciences Act (§§ 1–4) (§ 1 setting forth definitions, etc.; § 2 regarding Depreciation Allowances; § 3 providing for Economic Development Projects and Bonds;[5] and § 4 reporting requirements)

2. The Venture Capital Investment Act (§§ 5–7)

3. Public Institutions of Higher Learning relating to bonuses for employees, fee waivers for students, grant positions and health insurance and, in particular, vesting public institutions of higher learning with the power of eminent domain (§ 8)

4. The South Carolina Research University Infrastructure Act (§ 9)

5. An Act defining Permanent Improvement Project (§ 10)

6. Use of funds by research universities (§ 11)

7. Creation of a Four–Year Culinary Curriculum Program at Trident Technical College (§ 12)

8. Authorization of a Four-year degree program at University of South Carolina–Sumter (§ 13)

9. A requirement of prior authorization for campus closing for USC (§ 14)

10. A requirement of annual reports of the number of out-of-state undergraduate students at any public institution of higher learning (§ 15)

---

5. Section 3(C) of the Act also includes the provisions for issuance of bonds for a tourism training infrastructure project or a national and international convention and trade show center.

438

11. Eligibility requirements for Life Scholarship recipients (§ 16) (and §§ 17–18 defining eligible institutions and grade point averages)

12. A Law School Feasibility Study for South Carolina State University (§ 19)

13. Section 20 (provisions not to be construed as an appropriation of funds)

14. Severability Clause (§ 21)

S.C. Constitution, Art. III, § 17 provides that "every Act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." The purpose of Article III, § 17 is (1) to apprise the members of the General Assembly of the contents of an act by reading the title, (2) prevent legislative log-rolling and (3) inform the people of the state of the matters with which the General Assembly concerns itself. *South Carolina Public Svc. Authority v. Citizens and Southern Nat'l Bank,* 300 S.C. 142, 386 S.E.2d 775 (1989). *See also Keyserling v. Beasley,* 322 S.C. 83, 470 S.E.2d 100 (1996). Article III, § 17 is to be liberally construed so as to uphold an Act if practicable. *McCollum v. Snipes,* 213 S.C. 254, 49 S.E.2d 12 (1948). Doubtful or close cases are to be resolved in favor of upholding an Act's validity. *Alley v. Daniel,* 153 S.C. 217, 150 S.E. 691 (1929). Article III, § 17 does not preclude the legislature from dealing with several branches of one general subject in a single act. It is complied with if the title of an act expresses a general subject and the body provides the means to facilitate accomplishment of the general purpose. *Keyserling, supra.* However, Article III, section 17 requires "the topics in the body of the act [be] kindred in nature and hav[e] a legitimate and natural association with the subject of the title," and that the title conveys "reasonable notice of the subject matter to the legislature and the public." *Hercules, Inc. v. S.C. Tax Comm'n,* 274 S.C. 137, 141, 262 S.E.2d 45, 47 (1980).

It is patent that the myriad provisions comprising Act 187 simply do not comprise one subject.[6] On the contrary, the

---

6. We simply cannot accept the dissent's assertion that the General Assembly may enact myriad measures, ranging from establishment of life sciences facilities to creation of a culinary arts institute, under the

Act is teeming with subjects, from life sciences provisions to the establishment of a culinary arts institute. In our view, Act 187 is obviously violative of Article III, § 17. However, notwithstanding this violation, we must address whether portions of the Act may be read to express one subject and, if so, whether the offending provisions may be severed. We find that they may.

As noted previously, Section 21 of Act 187 contains a very detailed severability clause, as follows:

> If any section, subsection, paragraph, subparagraph, sentence, clause, phrase, or word of this act is for any reason held to be unconstitutional or invalid, such holding shall not affect the constitutionality or validity of the remaining portions of this act, the General Assembly hereby declaring that it would have passed this act, and each and every section, subsection, paragraph, subparagraph, sentence, clause, phrase, and word thereof, irrespective of the fact that any one or more other sections, subsections, paragraphs, subparagraphs, sentences, clauses, phrases, or words hereof may be declared to be unconstitutional, invalid, or otherwise ineffective.

We recently addressed severability in *Joytime Distribs. & Amusement Co. v. State,* 338 S.C. 634, 649, 528 S.E.2d 647, 654 (1999), stating:

> The test for severability is whether the constitutional portion of the statute remains complete in itself, wholly independent of that which is rejected, and is of such a character that it may fairly be presumed that the legislature would have passed it independent of that which conflicts with the constitution. "When the residue of an Act, sans that portion found to be unconstitutional, is capable of being executed in accordance with the Legislative intent, independent of the rejected portion, the Act as a whole should not be stricken as being in violation of a Constitutional Provision."

We find the offending portions of Act 187 are severable. From a reading of the entire Act, it is evident that its underlying purpose was to foster economic growth in this

---

general guise of "economic development," and thereby comport with the one subject requirement of Article III, § 17. For this Court to accept such a premise would give tacit approval to legislative logrolling.

440

state through development of the life sciences industry. Accordingly, we find the "one subject" of the Act is that of life sciences. Further, we find several provisions of the Act are so intertwined with the provision and growth of the life sciences field that they can reasonably be deemed to fall within that subject.

 The Life Sciences Act, section 1 of the Act, has the purpose of fostering economic development and encouraging the creation of high-paying jobs in the life sciences industry.[7] Section 2 captioned "Depreciation Allowances," sets forth a 20% depreciation allowance for machinery and equipment used directly in the manufacturing processes of a life science facility. Section 3 of Act 187 provides for Economic Development Projects and Bonds, and increases the limits on general obligation debt in order to "foster economic development and to encourage the creation of high-paying jobs in the life sciences industry." Section 4 provides for annual reports of the cost and benefit of the act. We find each of these sections is intrinsically related to the underlying purpose of the Life Sciences Act so as to fall within its one subject.[8]

 Sections 5 through 7 of the Act, the "Venture Capital Investment Act," were enacted to increase the availability of equity, near-equity, or seed capital in amounts of one hundred million dollars or more for emerging, expanding, relocating, and restructuring enterprises in the State, so as to help strengthen the state's economic base, and to support the economic development goals of this State. We find these provisions sufficiently related to the General Assembly's goal of fostering economic development in the life sciences industry to withstand a challenge under Article III, § 17.

7. A "life sciences facility" is defined as a "business engaged in pharmaceutical, medicine, and related laboratory instrument manufacturing, processing, or research and development ..." Section 1(B).

8. However, section 3(C) of the Act includes the provisions for issuance of bonds for a tourism training infrastructure project or a national and international convention and trade show center. We simply do not see that these provisions are kindred in nature to the underlying spirit of the Life Sciences bill; accordingly, this provision is stricken as violative of the Article III, § 17.

■ Section 8 of the Act is entitled "Public Institutions of Higher Learning." It provides for bonuses for employees, fee waivers for students, establishes grant positions, and providing graduate students with health insurance. This section of the Act also vests the board of trustees of such institutions with the power of eminent domain. We simply cannot find that these provisions inhere with the underlying purposes of the Life Sciences Act. Accordingly, they are stricken as violative of Article III, § 17.

■ Section 9 of the Act, the South Carolina Research University Infrastructure Act,[9] increases the limitation on general obligation bond debt to six percent. This section is similar in nature to Section 3 of the Act (Economic Development Projects and Bonds), and aids with funding for research universities. Given the direct correlation between research universities and the life sciences field, we find this section sufficiently related to the purposes of the Life Sciences Act to comply with Article III, § 17.

■ Section 10 of the Act requires the State Budget and Control Board to formally establish each permanent improvement project before any actions may be taken to implement such a project. This section of the Act, although conceivably related to the Life Sciences Act, is simply too remote to be deemed part of the one subject expressed in that Act. Accordingly, it is stricken.

■ Section 11 of the Act, entitled "Use of Funds," governs funding sources which may be utilized by senior research universities to provide for endowed professorships. Notably, this section states that matching funds from private or federal sources may only be used for "Engineering, Nanotechnology, Biomedical Sciences, Energy Sciences; Environmental Sciences, Information and Management Sciences, and for other sciences and research that create well-paying jobs and enhanced economic opportunities for the people of South Carolina." Clearly, these provisions directly relate to the underlying purposes of the Life Sciences Act.

---

9. The purpose of this increase is "to advance economic development and create a knowledge based economy, thereby increasing job opportunities, and to facilitate and increase research within the State at the research universities."

442

■ We have reviewed the remaining sections of Act 187, and we simply cannot find them to be within the purview of the Life Sciences Act. Accordingly, they are, with the exception of the severability clause set forth in section 21, stricken as violative of Article III, § 17. The stricken sections are as follows:

Section 12—authorizing Trident Technical College to establish a four-year culinary curriculum program.

Section 13—authorizing the University of South Carolina Sumter campus to offer four-year degree programs.

Section 14—requiring prior authorization for any campus of the University of South Carolina to close any of its campuses.

Section 15—requiring public institutions of higher learning to annually report the number of out-of-state undergraduate students in attendance at the university for each semester.

Section 16—setting forth certain eligibility requirements for LIFE scholarship recipients. Sections 17 and 18 defining institutions at which students are eligible to receive a LIFE Scholarship and establishing the requisite grade point averages for recipients.

Section 19—establishing a committee to study the feasibility and need for a School of Law at South Carolina State University in Orangeburg.

Section 20 sets forth the General Assembly's intent that the provisions set forth in the Act not be construed to appropriate funds.

We simply do not see any manner in which the above provisions relate to the one subject of the Life Sciences Act. Any relation which they may have is clearly too tangential to fit within the purpose and meaning of Article III, § 17. Accordingly, the above provisions are stricken.

## CONCLUSION

We find Act No. 187 violates the one subject requirement of Article III, § 17 of the constitution. However, we find those provisions which are germane to the Life Sciences Act, as set forth above, are within the one subject requirements of Article

III and are, accordingly, upheld. The offending provisions of Act 187 are stricken.

TOAL, C.J., MOORE and BURNETT, concur.
PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully concur in part and dissent in part. In my opinion, Act 187 is constitutional in its entirety.

"The three objectives of the constitutional provision requiring that each act relate to one subject are to (1) apprise the members of the General Assembly of the contents of an act by reading the title, (2) prevent legislative log-rolling and (3) inform the people of the State of the matters with which the General Assembly concerns itself." *S.C. Pub. Serv. Auth. v. Citizens and S. Natl. Bank of S.C.*, 300 S.C. 142, 162, 386 S.E.2d 775, 786–87 (1989) (citations omitted); *Carll v. S.C. Jobs–Economic Dev. Auth.*, 284 S.C. 438, 442, 327 S.E.2d 331, 334 (1985) (citations omitted).

The title of an act "need not be an index to every provision of the act" in order to "apprise members of the General Assembly" and "inform the people of the State." *Carll*, 284 S.C. at 442, 327 S.E.2d at 334 (citing *Hercules, Inc. v. S.C. Tax Commn.*, 274 S.C. 137, 262 S.E.2d 45 (1980)). In this case, the title *is* an index to every provision of Act 187, so neither the legislators nor the people lacked notice of the acts contents. Accordingly, Act 187 does not violate the first or third objectives of Article III, section 17.

That leaves log rolling as the only possible basis for invalidating the act. "Log rolling" is a "legislative practice of embracing in one bill several distinct matters, none of which, perhaps, could singly obtain the assent of the legislature, and then procuring its passage by a combination of the minorities in favor of each of the measures into a majority that will adopt them all." Blacks Law Dictionary 849 (5th ed. 1979). In the language of the constitution, "every Act or resolution having the force of law shall relate to but one subject." S.C. Const. art. III, 17.

The issue is, therefore, whether the provisions of Act 187 are germane to one subject. The majority finds that "the Act

is teeming with subjects, ranging from life sciences to the establishment of a culinary arts institute." I disagree. The majority's view of what constitutes a subject is too narrow. Article III, section 17 is to "be liberally construed, and construed so as to uphold [an act] if practicable." *Keyserling v. Beasley*, 322 S.C. 83, 86, 470 S.E.2d 100, 102 (1996); *McCollum v. Snipes*, 213 S.C. 254, 261, 49 S.E.2d 12, 14 (1948). Here, all of Act 187's provisions reasonably relate to the subject of economic development.

That "economic development" is a general subject does not render it an invalid subject. Article III, section 17 "does not preclude the legislature from dealing with several branches of one general subject in a single act." *Keyserling*, 322 S.C. at 86, 470 S.E.2d at 102 (citing *De Loach v. Scheper*, 188 S.C. 21, 198 S.E. 409 (1938)). Further, the Court should read the provisions of Act 187 together, not in isolation. *Keyserling*, 322 S.C. at 88, 470 S.E.2d at 103. Act 187 addresses various aspects of economic development, including a knowledge-based workforce, the life-sciences industry, research, education, venture capital, permanent improvements, and tourism.[10] I would uphold Act 187 in its entirety.

I do not agree with the majority that Act 187 is "teeming with subjects." As I have stated, I believe the act relates to several branches of one subject. If Act 187 were indeed an indulgence in log rolling, then it should be declared unconstitutional in its entirety. Log rolling undermines the legislative process and the democratic principle of majority rule. Severing certain provisions of an act neither prevents nor corrects log rolling, but rather "creates uncertainty and promotes arbitrary and uneven enforcement" of the one-subject rule. *State ex rel. Ohio AFL–CIO v. Voinovich*, 69 Ohio St.3d 225, 249–50, 631 N.E.2d 582, 599–600 (Ohio 1994) (William Swee-

---

10. Some examples of topics beyond the scope of economic development are elections, judicial procedure, criminal law, and domestic-relations law. The only provision invalidated by the majority that is arguably not germane to economic development is section 20, which "sets forth the General Assembly's intent that the provisions set forth in the Act not be construed to appropriate funds." The majority strikes section 20 because it is unrelated to life sciences. It is unrelated, however, because it is an interpretation section. Under the majority's rationale, the section containing the severability clause should also be stricken, for it does not relate to life sciences, either.

ney, J., concurring in part and dissenting in part); *see also State ex rel. Hinkle v. Franklin County Bd. of Elections*, 62 Ohio St.3d 145, 153, 580 N.E.2d 767, 773 (Ohio 1991) (Douglas, J., dissenting) (asking, "[H]ow does the majority know which part of the Act is defective? The Act is a promulgation of the General Assembly in package form. Can we break into the package and excise what we perceive (or want to be) the offending part?"); *Heggs v. State*, 759 So.2d 620, 630 (Fla. 2000) (stating it is "manifestly unsound to employ severability"). Employing the severability clause in Act 187 turns the Court into a super-legislature.

Because I find all of Act 187's provisions germane to the one subject of economic development, I would hold the act constitutional in its entirety.