618 S.E.2d 876

Edward D. SLOAN, Jr., individually and as a Citizen, Resident, Taxpayer, and Registered Elector of the State of South Carolina, and on behalf of all others similarly situated, Petitioner,

v.

The DEPARTMENT OF TRANSPORTATION, an Agency of South Carolina, and the Commission of the Department of Transportation, Robert W. Harrell, John N. Hardee, Eugene Stoddard, F. Hugh Atkins, B. Bayles Mack, L. Morgan Martin, and J.M. Truluck, in their capacities as Commissioners thereof, Respondents.

No. 26014.

Supreme Court of South Carolina.

Heard April 6, 2005.
Decided July 25, 2005.
Rehearing Denied Sept. 22, 2005.

300

Jennifer J. Miller and James G. Carpenter, both of The Carpenter Law Firm, P.C., of Greenville, for Petitioner.

Franklin J. Smith, Jr., of Richardson, Plowden, Carpenter & Robinson, P.A., of Columbia, and William A. Coates, of Roe Cassidy Coates & Price, P.A., of Greenville, for Respondents.

Justice WALLER:

We granted a writ of certiorari to review *Sloan v. Dep't of Transp.*, Op. No. 2003–UP–416 (S.C. Ct.App. filed June 19, 2003), in which the Court of Appeals found appellant Edward Sloan (Sloan) lacked standing to bring these actions challenging the procurement procedure used by the Department of Transportation (DOT) to award construction contracts. We reverse the Court of Appeals on the standing issue and the circuit court on the merits.

## FACTS

Sloan, a resident of Greenville County, brought these three separate actions, which were consolidated for trial, challenging the procurement procedures used in the construction of: the Carolina Bays Parkway in Horry County, the Cooper River Bridge, and Highway 170 in Beaufort County.[1] Sloan alleges the DOT violated statutory bidding requirements because these construction projects were procured by Requests for Proposals ("RFPs") rather than competitive sealed bids.[2]

Both parties moved for summary judgment. The circuit court found Sloan did not have taxpayer standing or a particularized interest in the controversy. However, the court found standing because the issues involved "great public importance" and the same procedure would be used in the future. The court then granted the DOT summary judgment on the mer-

---

1. Sloan also sought to enjoin the procurement of the Cooper River Bridge project. At the time of the hearing, construction had begun on the Carolina Parkways and Highway 170 and final funding was in the process of being secured for the Cooper River Bridge. The respondents represented that the Cooper River Bridge project would be similarly procured and it was.

2. The Court has ruled that the bonding issue raised in the trial court is not properly before it. (Order filed Sept. 22, 2004.)

its.[3] Alternatively, it found laches barred the actions regarding Carolina Bays Parkway and Highway 170.

The Court of Appeals reversed in part and affirmed in part. The Court of Appeals affirmed the circuit court's ruling that Sloan did not have taxpayer standing or a particularized interest in the controversy. The Court of Appeals, however, reversed the circuit court's finding that Sloan had standing and did not address the merits of the case or whether laches barred any of the actions.

## ISSUES

1) Is this case moot?
2) Does Sloan have standing?
3) Did the circuit court err in granting the DOT summary judgment?

## DISCUSSION

### 1) Mootness[4]

The DOT contends this case should be dismissed as moot because the construction contracts have been awarded and fully performed. We disagree.

"[A]n appellate court can take jurisdiction, despite mootness, if the issue raised is capable of repetition but evading review." *Curtis v. State*, 345 S.C. 557, 568, 549 S.E.2d 591, 596 (2001). Additionally, "if a decision by the trial court may affect future events, ... an appeal from that decision is not moot, even though the appellate court cannot give effective relief in the present case." *Id.* Clearly, this issue is capable of repetition, yet will usually evade review. Accordingly, despite mootness, we will address the merits.

---

3. The parties agreed that there were no factual determinations for the circuit court to make.

4. After oral argument in this case, the DOT filed a motion to dismiss on the ground that an opinion is now moot because of the enactment of recent legislation which allows the DOT to award construction contracts using a design/build procedure. The legislation became effective June 14, 2005. We denied the motion to dismiss. This opinion is not moot as there may be other contracts which were awarded by the DOT prior to the enactment of this legislation.

## 2) Standing

■■■ The circuit court found the issues raised by Sloan were of such public importance that standing should be conferred upon him. The Court of Appeals reversed and held Sloan did not have standing because, even though raising an issue of public importance, he failed to show a nexus between himself and the actions. Sloan contends this was error. We agree.

■■■ Under the public importance exception, standing may be conferred upon a party "when an issue is of such public importance as to require its resolution for future guidance." *Baird v. Charleston Cty.*, 333 S.C. 519, 531, 511 S.E.2d 69, 75 (1999). This Court has never held that there must be no other potential plaintiffs with a greater interest in the case or some other nexus, as the respondents now argue.

This Court recently noted that standing is not inflexible and standing may be conferred upon a party when an issue is of such public importance as to require its resolution for future guidance. *Sloan v. Wilkins*, 362 S.C. 430, 608 S.E.2d 579 (2005)(holding Sloan had standing to challenge legislative enactment). Additionally, both this Court and the Court of Appeals have found standing in other cases of important public interest without requiring the plaintiff to show he has an interest greater than other potential plaintiffs. *See id.*; *Sloan v. Sanford*, 357 S.C. 431, 593 S.E.2d 470 (2004) (holding standing to challenge governor's commission as officer in Air Force reserve); *Sloan v. Greenville Cty.*, 356 S.C. 531, 548, 590 S.E.2d 338, 347 (Ct.App.2003) (holding plaintiff had standing to bring declaratory judgment action alleging county failed to comply with ordinances governing procurement). Furthermore, in an extremely similar case, *Sloan v. School Dist. of Greenville Cty.*, the Court of Appeals held that in addition to Sloan's standing as a taxpayer, Sloan had standing because the "issues involved 'are of such wide concern' that this declaratory judgment action should be decided for future guidance in the expenditure of public funds pursuant to competitive sealed bidding requirements." 342 S.C. 515, 524, 537 S.E.2d 299, 304 (Ct.App.2000). None of these cases required the plaintiff show the absence of any other potential plaintiffs with a greater interest or any other nexus. Accordingly,

*despite the mootness in the present case,* we find Sloan has standing *to raise this issue.*

### 3) Merits

■ Generally, there are two ways through which a construction contract may be awarded: 1) RFPs or Design/Build process; and 2) Invitation for Bids or Design /Bid/Build process, also referred to as competitive sealed bidding. The Court of Appeals recently addressed the differences between these two processes in *Sloan v. Greenville Cty.,* 356 S.C. 531, 540, 590 S.E.2d 338, 343. In that case, Sloan brought an action against Greenville County alleging it failed to comply with county ordinances governing the procurement of construction services when it awarded contracts for the completion of three public works projects. As explained by the Court of Appeals, contracts awarded by the competitive sealed bidding proceed in multiple stages. *Id.* An architect or other design professional is hired to prepare initial plans and specifications for the project and after approval of these initial plans, a bid package is developed to publicly solicit bids from contractors to perform the work. The lowest bidder is awarded the project. *Id.*

However, the RFP or Design/Build procurement method differs from traditional competitive sealed bidding in two important ways. First, under the Design/Build method, there is only one contract for both the design and construction of the project. Second, the Design/Build method allows for subjective evaluations to be made when awarding the contract. Price does not have be the sole or primary criterion for evaluating the proposals. *Id.* "It is design-build's lack of objective, bright-line criteria that raises concerns about its use. Critics espouse that design-build vests too much discretion with the governing body regarding when and to whom public contracts are awarded. Because price is not a controlling factor in design-build source selection, the public entity may not always receive the lowest, most competitive price possible." *Id.* at 541, 590 S.E.2d at 344. Sloan contends that using the Design/Build method also limits the number of potential vendors who can submit proposals because construction companies without design capability cannot make proposals.

The DOT's discretion to use Design/Build method instead of competitive sealed bidding *was* limited by S.C.Code § 57–5–1620. This section provides:

Awards by the department of construction contracts for ten thousand dollars and more shall be made only after the work to be awarded has been advertised for at least two weeks in one or more daily newspapers in this State, but where circumstances warrant, the department may advertise for longer periods of time and in other publication media. *Awards of contracts, if made, shall be made in each case to the lowest qualified bidder whose bid shall have been formally submitted in accordance with the requirements of the department.* However, in cases of emergencies, as may be determined by the Director of the Department of Transportation, the department, without formalities of advertising, may employ contractors and others to perform construction or repair work or furnish materials and supplies for such construction and repair work, but all such cases of this kind shall be reported in detail and made public at the next succeeding meeting of the commission.

(emphasis added). Sloan contends the respondents violated § 57–5–1620 by awarding the construction contracts to someone other than the lowest qualified bidder (i.e. using the Design/Build process). The respondents contend the DOT had other statutory authority to use the Design/Build procurement methods and, in any event, it does not matter because the DOT awarded the contracts to the lowest bidders complying with § 57–5–1620.

Agreeing with the DOT, the circuit court found it had complied with § 57–5–1620 because each project was ultimately awarded to the lowest bidder. Sloan contends this was error. We agree. The fact that these three contracts were awarded to the lowest bidder is irrelevant. As discussed above, the issue in this specific case is moot because the contracts have been awarded and fully performed. However, as discussed above despite this mootness *as to these three contracts,* we have determined we should address the issue of whether the DOT *should have followed § 57–5–1620 in awarding other contracts.*

██ The DOT cites several statutes which it claims gave it the authority to use the Design/Build process. However, these statutes *did* not specifically grant it the authority to use the Design/Build procurement method. Further, *when these contracts were awarded,* there *was* no repeal by implication of § 57–5–1620 nor *was* there a conflict between it and the other statutes cited by the respondents. *In re Keith Lamont G.,* 304 S.C. 456, 405 S.E.2d 404 (1991)(holding statutory sections that are part of the same general statutory law must be construed together). While the DOT has determined that the Design/Build method is more desirable, nothing in the statutes it cites requires the DOT to use it. Furthermore, to hold as the respondents argue would render § 57–5–1620 meaningless. Accordingly, we hold the circuit court erred and the DOT *must have followed § 57–5–1620 in awarding contracts.*

 The circuit court judge also determined two of the three actions were barred by laches.[5] The Court of Appeals, after holding Sloan did not have standing, specifically declined to address the laches issue. On appeal to this Court, Sloan failed to raise the laches issue. The failure to appeal an alternative ground of the judgment below will result in affirmance. *South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.,* 316 S.C. 163, 447 S.E.2d 843 (1994). *See Town of Mt. Pleasant v. Jones,* 335 S.C. 295, 516 S.E.2d 468 (Ct.App. 1999) (holding an unappealed ruling becomes the law of the case, and the appellate court must assume the ruling was correct). However, even if laches bars two of Sloan' actions, the third one remains. Accordingly, laches does not prevent this Court from reviewing this issue.

██ Sloan seeks a remand to the Court of Appeals for a determination regarding the bond issue. This Court entered an order on September 22, 2004, striking from Sloan's brief

---

**5.** "Laches is neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." *Muir v. C.R. Bard, Inc.,* 336 S.C. 266, 296, 519 S.E.2d 583, 598 (Ct.App.1999). Under laches, if a party who knows his rights does not timely assert them, and by his delay, causes another party to incur expenses or otherwise detrimentally change his position, then equity steps in and refuses to enforce those rights. *Id.,* 519 S.E.2d at 599.

any argument on the bond issue as procedurally barred because he failed to include the issue in his petitions for rehearing and certiorari citing Rule 226(d)(2), SCACR (only questions raised in Court of Appeals and in petition for rehearing shall be included in petition for writ of certiorari). Accordingly, this issue was not preserved for review. Rule 226(d)(2), SCACR; *see also Anonymous v. State Bd. of Med. Examiners,* 329 S.C. 371, 496 S.E.2d 17 (1998). We cannot remand an issue not properly before us. Accordingly, we deny Sloan's request for a remand.

**REVERSED.**

TOAL, C.J., MOORE and BURNETT, JJ., concur.
PLEICONES, JJ., dissenting in a separate opinion.

Justice PLEICONES dissenting.

I respectfully dissent. In my opinion, Sloan lacks standing to bring this action.

As the majority states, this case presents an issue of great public importance. However, "[t]he mere fact that the issue is one of public importance does not confer upon any citizen or taxpayer the right to invoke per se a judicial determination of the issue." *Crews v. Beattie,* 197 S.C. 32, 49, 14 S.E.2d 351, 358 (1941). I agree with the Court of Appeals that the existence of potential plaintiffs with greater interests, while not determinative in all cases, here weighs heavily against finding standing.

The potential plaintiffs with interests greater than Sloan's are the companies to which the bid was not awarded. Large amounts of money are at stake in bidding competitions, so a losing bidder has a strong incentive to take action if the process appears in violation of the law. That no such bidder is now before the Court does not mean that Sloan automatically has standing. When there exist numerous potential plaintiffs that have been directly and significantly affected, a court should be very reluctant to confer standing upon a member of the general public who can allege no particular harm. Third-party standing is supposed to be the exception, not the rule.

The recent opinions of this Court cited by the majority are distinguishable from the case *sub judice.* *Sloan v. Wilkins,*

362 S.C. 430, 608 S.E.2d 579 (2005); *Sloan v. Sanford*, 357 S.C. 431, 593 S.E.2d 470 (2004). Neither *Wilkins* nor *Sanford* involved potential plaintiffs capable of alleging such direct, distinct harm as that which the losing bidders could allege here.

In my opinion, Sloan lacks standing to bring this action. The Court of Appeals' decision should be affirmed.